CC-96-462                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| MIRIAM PEREZ SUAREZ<br>EX PARTE<br><br>        Recurrida<br><br>        V.<br><br>DEPARTAMENTO DE LA FAMILIA,<br>PROCURADORA ESPECIAL DE<br>RELACIONES DE FAMILIA<br><br>        Recurrida<br>_____<br><br>MIRIAM SANTOS TORRES Y<br>ANGEL LOPEZ TAVERAS<br><br>        Recurridos<br><br>        V.<br><br>LYDIA LEON CRUZ<br><br>        Peticionaria | Certiorari<br><br>99TSPR17 |

Número del Caso: CC-96-0462

Abogados de la Parte Peticionaria: LCDO. BENJAMIN RIVALTA LOPEZ
LCDA. JOANNE BIAGGI MASCARO

Abogados de la Parte Recurrida: LCDA. ANA LOPEZ PRIETO

Abogados de la Procuradora Especial de Relaciones de Familia:
HON. CARLOS LUGO FIOL
PROCURADOR GENERAL

LCDA. CARMEN A. RIERA CINTRON
PROCURADORA GENERAL AUXILIAR

Abogado de la Secretaria del Departamento de la Familia:
LCDO. CARLOS PEREZ RODRIGUEZ

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, BAYAMON Y SAN JUAN

Juez del Tribunal de Primera Instancia: Hon. JOSE R.PARES MARTINEZ(BAY)
                              Hon. LOURDES V. VELAZQUEZ CAJIGAS(S.J.)

Tribunal de circuito de Apelaciones: CIRCUITO REGIONAL II BAYAMON

Juez Ponente: CORDERO

Panel Integrado Por:  Presidente Juez Ortiz Carrión y los Jueces
Giménez Muñoz y Cordero

Fecha: 2/17/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Fecha: 2/17/1999

Materia:

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Miriam Pérez Suárez**
Ex parte

      Recurrida

         v.                         Núm. CC-96-462

Departamento de la Familia,
Procuradora Especial de
Relaciones de Familia

      Recurrida

Miriam Santos Torres y
Angel López Taveras

      Recurridos

         v.

Lydia León Cruz

      Peticionaria

Opinión del Tribunal emitida por la Juez Asociada señora Naveira de Rodón

San Juan, Puerto Rico, a 17 de febrero de 1999

I

El 26 de abril de 1992, la Sra. Lydia León Cruz dio a luz a una niña en el Hospital Regional de Bayamón, a la cual quería dar en adopción. El Hospital refirió el caso al Centro de Verificación y Tratamiento para Menores Víctimas de Maltrato del antiguo Departamento de Servicios Sociales, hoy Departamento de la Familia (en adelante Departamento), Oficina Regional de San Juan.

El Departamento, una vez enterado de que la señora León Cruz era drogadicta, procedió a preparar un plan de servicio para que ésta aceptara a su hija. Este tipo de plan incluye el inscribir a los menores en el Registro Demográfico, reubicarlos en hogares de crianza, proveer servicios de rehabilitación a los padres, además de brindar servicios médicos y psicológicos.

Se inscribió a la niña en el Registro Demográfico con el nombre de R.K.L.C. Luego de intentar rehabilitar infructuosamente a la señora León Cruz y de que ésta aceptara a su bebé, en mayo de 1992 el Departamento presentó en el entonces Tribunal Superior, Sala de Bayamón, Asuntos de Menores, una Petición de Privación de Custodia conforme a las disposiciones de la Ley Núm. 75 de 28 de mayo de 1980, según enmendada, 8 L.P.R.A. sec. 401 et seq., también conocida como la Ley de Protección a Menores. La menor R.K.L.C. fue enviada al hogar de crianza de los esposos Víctor G. Camacho y Miriam Pérez Suárez.

El 8 de julio de 1993, la señora León Cruz dio a luz otra niña, la cual fue inscrita con el nombre de E.K.L. La señora León Cruz manifestó su deseo de dar en adopción a la menor, ya que tenía otros tres hijos y no le podía brindar los cuidados necesarios debido a su situación económica y a su problema de adicción a drogas.

El Departamento intervino con la señora León Cruz para privarla de la custodia de la menor E.K.L. bajo las disposiciones de la Ley Núm. 75, supra, debido a su adicción a drogas, a no haber cumplido con el plan de servicios impuesto y a su condición económica. La menor fue entregada al hogar de crianza de los esposos Ángel López y Miriam Santos.

Cuando se reubicó a las niñas también se diseñó un plan permanente dirigido a rehabilitar a la madre para que, en un futuro, las menores R.K.L.C. y E.K.L. regresaran a su hogar biológico. Se pautaron y celebraron por el tribunal las correspondientes vistas de ratificación, revisión y seguimiento. Asimismo, se estableció un plan de pases y aproximaciones sucesivas al hogar biológico bajo la supervisión del Departamento. Bajo este plan, la madre biológica ha estado relacionándose con sus hijas.

En octubre de 1995, los esposos Víctor G. Camacho y Miriam Pérez Suárez y Ángel López y Miriam Santos presentaron sendas peticiones de adopción de sus hijas de crianza. Como estas familias radican en distintos municipios, las acciones se presentaron en dos salas diferentes del Tribunal de Primera Instancia: una en la Sala Superior de San Juan y otra en la Sala Superior de Bayamón.

La señora León Cruz solicitó la desestimación de ambas acciones. La Sala Superior de Bayamón acogió esta petición y desestimó la acción de adopción por ser prematura, ya que estaba pendiente de adjudicación el procedimiento de custodia bajo la Ley Núm. 75, supra, en el Tribunal de Menores, aparte de que la señora León Cruz todavía ostentaba la patria potestad sobre la menor. Por su parte, la Sala Superior de San Juan se negó a desestimar y decidió considerar las solicitudes que le fueron presentadas.

La Sra. Miriam Pérez Suárez, madre de crianza de la menor R.K.L.C., presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito), Circuito Regional II de Bayamón, donde señalaba que había errado la Sala Superior de Bayamón al desestimar la petición de adopción por problemas de madurez. Por su parte, la señora León Cruz presentó un recurso de certiorari ante el Tribunal de Circuito, Circuito Regional I de San Juan, donde alegaba que la Sala Superior de San Juan no podía entender en la petición de adopción que había sido presentada.

El 20 de agosto de 1996, el Tribunal de Circuito, Circuito Regional II de Bayamón, ordenó la consolidación de ambos recursos. Además, determinó que los casos consolidados serían resueltos por el Circuito Regional II de Bayamón.

Luego de los trámites de rigor, el 30 de septiembre de 1996 el Tribunal de Circuito, mediante sentencia, emitió, entre otras, las siguientes órdenes: ordenó al foro de instancia celebrar un juicio de novo para que resolviera todas las controversias surgidas, además ordenó el cese de "todas las visitas supervisadas hasta que el tribunal pueda hacer sus determinaciones en cuanto [a]l efecto sobre los menores, si alguno, que hayan tenido dichas visitas, y el efecto, si alguno, que podrían tener las visitas futuras...."; y resolvió que, bajo su poder supervisor, mantendría jurisdicción sobre los casos consolidados, y de tener alguna de las partes que recurrir en alzada de cualquier situación surgida, lo haría utilizando el mismo caso y el mismo epígrafe.

Oportunamente, la señora León Cruz presentó ante nos un recurso de certiorari contra la sentencia del Tribunal de Circuito.[1] Visto el escrito, el 23 de enero de 1997 emitimos una orden de mostrar causa limitando nuestra intervención a revisar **únicamente** las dos órdenes antes mencionadas.

Las partes han cumplido, por lo que estamos en posición de resolver sin ulteriores procedimientos.[2]

II

La Ley Núm. 75, supra, se concibió con el propósito de que el Estado, ejerciendo su poder de parens patriae, velara por la seguridad de los menores que están en Puerto Rico. Su finalidad es "lograr la protección de los niños que son víctimas del maltrato o negligencia, por tanto, la actividad del funcionario, profesional o magistrado que intervenga en estos casos será, antes que nada, de protección a los menores". (Énfasis nuestro.) Ley Núm. 75, supra, Exposición de Motivos, Leyes de Puerto Rico, pág. 195 (1980).

A tenor con esta ley se redactó el Reglamento Núm. 4 de la Ley de Protección de Menores. En su Sección III, relativa a la política a seguirse, este Reglamento expresa que el hogar biológico es el lugar ideal para el desarrollo efectivo del niño. Además, afirma que si hay que decidir entre los intereses de la familia biológica y la protección del menor, la prioridad será para la protección del menor, recurriendo al tribunal de ser necesario. Sec. III, inciso C del Reglamento.

---

[1] Alegó la comisión de ocho errores, los cuales pueden resumirse en los siguientes:
1. Erró el Tribunal de Circuito al revocar la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, Sala de Relaciones de Familia.
2. Erró el Tribunal de Circuito al confirmar la resolución dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, Sala de Relaciones de Familia.
3. Erró el Tribunal de Circuito al ordenar el traslado y consolidación de los casos de adopción con el de custodia para que sea el Tribunal de Primera Instancia, Sala Superior de Bayamón, Sala de Relaciones de Familia, el que resuelva el mismo (errores tres y cuatro).
4. Erró el Tribunal de Circuito al establecer un procedimiento sui generis para la conducción y resolución de los casos cuya consolidación ordenó.
5. Erró el Tribunal de Circuito al ordenar que comenzara de novo el procedimiento de la Ley Núm. 75, supra.
6. Erró el Tribunal de Circuito al ordenar el cese de las visitas materno filiales que estaban programadas para la señora León Cruz y sus hijas.
7. Erró el Tribunal de Circuito al retener jurisdicción sobre los casos consolidados.

[2] Las partes recurridas presentaron dos mociones solicitando la desestimación del presente recurso. Ninguna de ellas tiene mérito. Primero, el Art. 3.002(d)(1) del Plan de Reorganización Núm. 1 de la Rama Judicial de 1994, conocido como la Ley de la Judicatura de Puerto Rico de 1994 y la Regla 53.1(d)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. III, disponen que cuando, entre otros, alguna de las instrumentalidades del Estado Libre Asociado de Puerto Rico sea parte en alguna acción, se tiene un término de sesenta (60) días para presentar un recurso de certiorari en el Tribunal Supremo. Esta norma fue interpretada en Sist. Univ. Ana G. Méndez v. C.E.S. II, P.C. de 21 de febrero de 1997, 142 D.P.R. ___ (1997), 97 JTS 22. Segundo, luego de analizar la totalidad del expediente, hemos podido constatar que en el mismo se encuentran todos los documentos necesarios para adjudicar las controversias ante nuestra consideración.

Permea a través de la legislación relativa a la protección de menores, incluyendo las leyes que regulan los hogares de crianza, la filosofía de que el plan de permanencia ideal para todo niño removido de su hogar biológico es el retorno con sus padres. Hidalgo v. Depto. Servicios Sociales, 129 D.P.R. 605 (1991). Como consecuencia lógica de esta filosofía, "un padre tiene el derecho de relacionarse o visitar a un hijo que está en un hogar de crianza. Sólo cuando el plan de visitas envuelva riesgos para el menor se podrá limitar o prohibir el mismo". Id, pág. 619. Además, véase, Sterzinger v. Ramírez, 116 D.P.R. 762, 775 (1985).

En Pueblo en interés de los menores R.P.S., M.P.S. y C.J.N.S., Op. de 22 de julio de 1993, 134 D.P.R. ___ (1993), 93 JTS 121, expresamos que en el ámbito federal, la filosofía también ha sido que el mejor lugar donde puede estar un niño es en el hogar de sus padres biológicos y bajo el cuidado de éstos. Consignamos, además, que bajo la Ley Núm. 75, supra, dentro del ámbito del derecho puertorriqueño, la política pública ha sido velar por la integridad familiar. Finalmente, establecimos que el Estado es responsable de proveer los servicios necesarios para fortalecer los lazos familiares.

Al igual que en otras jurisdicciones, en su mayoría estatales norteamericanas, hemos reconocido que existe casi como una presunción de que los menores estarán mejor al lado de sus padres biológicos. Pueblo en interés de los menores R.P.S., M.P.S. y C.J.N.S., supra, pág. 11041 y casos allí citados.

Cabe señalar que en los últimos años, la Asamblea Legislativa ha enfatizado y, en cierta medida, reenfocado la política pública del Estado en cuanto al bienestar de los niños maltratados. Así, con la aprobación de la Ley Núm. 8 de 19 de enero de 1995, se enmendó la Ley Núm. 75, supra, y se estableció como política pública lo siguiente:

> [E]l hogar debe ser el medio por excelencia para lograr el óptimo desarrollo de un niño. Sin embargo, cuando los padres o los que les sustituyen hacen a sus hijos o pupilos víctimas del maltrato o negligencia, según dicho término se define en este Capítulo, es la obligación del Estado intervenir inmediatamente para proteger a los menores antes de que el daño ocasionado, o en riesgo de suceder por la acción u omisión de los padres o personas responsables del cuidado del menor, sea irreparable.
>
> Es, asimismo la política pública del Estado establecer, fuera de toda duda, que su interés preeminente es la protección y el bienestar del menor, y que, aún cuando el Estado tiene un deber de proveer servicios sociales de diverso tipo, para prevenir la remoción de los menores de sus hogares y de prestar servicios efectivos de rehabilitación a los padres, nunca pueden ser utilizados estos legítimos propósitos, por ninguna agencia del Estado Libre Asociado de Puerto Rico, para poner en riesgo de maltrato, abandono o exponer a experiencias nocivas a su desarrollo físico, mental, emocional o moral a ningún menor. (Énfasis nuestro.) 8 L.P.R.A. sec. 403.

Por su parte, el Informe del P. de la C. 1607 (que luego se convirtió en la Ley Núm. 8, supra) de la Comisión de lo Jurídico del Senado expresa que, a la luz de la realidad actual puertorriqueña, fue necesario realizar un cambio en la política pública del Estado. A estos efectos, se señaló que: "*LA NUEVA POLITICA PUBLICA QUE SE ESTABLECE CON ESTA MEDIDA ... ES QUE EL BIENESTAR DEL MENOR CONSTITUYE EL INTERES APREMIANTE PREDOMINANTE DEL ESTADO, Y CUALQUIER DUDA O CONTROVERSIA DEBE RESOLVERSE A FAVOR DEL MENOR, y ni las conveniencias administrativas, ni la necesidad de obtener fondos federales por parte del Estado pueden prevalecer sobre este principio*". (Énfasis en el original.) Informe, pág. 11.

Fue el propósito del legislador asegurarse de que el interés primordial por el que siempre se debe velar es el del menor; por su salud, bienestar y seguridad. Sin embargo, se debe destacar que esta política pública ya estaba presente en la Ley Núm. 75, supra, antes de ser enmendada. Esto surge claramente de la Exposición de Motivos de la Ley Núm. 75, supra, citada

anteriormente, donde desde la década del ochenta se había expresado que la función primordial de todo funcionario, profesional o magistrado que intervenga en casos de maltrato o negligencia será, antes que nada, de protección a los menores.

En Pueblo en interés de los menores R.P.S., M.P.S. y C.J.N.S., supra, este Tribunal tuvo la oportunidad de expresarse en torno a dicha filosofía. Allí discutimos lo que significa que el Estado realice esfuerzos razonables para preservar la unidad del núcleo familiar. Establecimos que en situaciones de emergencia no es necesario que antes de la remoción de los menores del hogar, el Departamento de la Familia demuestre que ha hecho esfuerzos razonables para mantener intacto el núcleo familiar. Consignamos específicamente que esa decisión estaba "guiada exclusivamente por lo que entendemos es el mejor bienestar de los más afectados en este proceso: los niños". Id., pág. 11041. Asimismo, hemos resuelto que la reintegración de un menor a su hogar biológico se debe llevar a cabo **siempre y cuando no exista ningún tipo de riesgos para su salud y bienestar**. Véase, Hidalgo v. Depto. Servicios Sociales, supra.

Por último, debemos destacar que el "cambio" ocurrido en la política pública del Estado en cuanto a la protección de los menores se debió principalmente a situaciones donde el Departamento de la Familia anteponía la recuperación y rehabilitación de los hogares biológicos a la protección y bienestar de los menores; esto debido a una interpretación errónea de la ley y de la jurisprudencia relacionada por parte de los funcionarios y empleados públicos encargados de implantar la Ley Núm. 75, supra.

Según surge del expediente que obra en autos en este Tribunal, parece existir una controversia sobre la situación actual de la señora León Cruz y el efecto que esto pueda tener sobre las menores R.K.C.L. y E.K.L. Por un lado, las partes recurridas alegan que, según ciertas evaluaciones psicológicas hechas a la señora León Cruz,[3] ésta sufre de un trastorno bipolar I, abuso de dependencia a sustancias mixtas y presenta un trastorno de personalidad NOS. Por otro lado, la técnica del Departamento de la Familia, la Sra. Lida Morales, ha expresado que los hijos de la señora León Cruz que viven con ella están bien adaptados, son felices y no tienen problema alguno. Del Apéndice del recurso, en específico de la petición de certiorari presentada por la señora León Cruz ante el Tribunal de Circuito, también surge que ésta había finalizado su tratamiento de rehabilitación en el Centro de Tratamiento para Adultos en San Juan de la Administración de Salud Mental y Contra la Adicción el 6 de octubre de 1995. Las pruebas periódicas que se le han realizado a la señora León Cruz demuestran que ésta no ha consumido sustancias controladas desde el 3 de noviembre de 1993.

De otra parte, la Procuradora de Relaciones de Familia expresa en su escrito de mostrar causa que es el Tribunal de Primera Instancia quien está en mejor posición para dilucidar si el plan de rehabilitación es el correcto y cuál sería su impacto sobre los menores. Por ello, considera que fue acertada la decisión del Tribunal de Circuito de detener en este momento las visitas entre la señora León Cruz y sus hijas hasta tanto no se celebre una vista evidenciaria en el Tribunal de Primera Instancia. Sin embargo, el Departamento de la Familia expresa en su escrito de mostrar causa que el foro de instancia fue el que autorizó las visitas supervisadas, y es dicho foro el que tiene a su disposición los medios necesarios para determinar el efecto que éstas tengan, si alguno, sobre las menores. Por eso, indica que las visitas no deben ser suspendidas.

Luego de un análisis minucioso del expediente hemos podido constatar que la única "evaluación psiquiátrica" que obra en autos es la hecha por la Dra. Carmen T. Cuevas, que forma parte del Apéndice

---

[3] Evaluación psicológica efectuada por el Dr. José A. Rivera Maldonado el 26 de marzo y el 18 de abril de 1996, que supuestamente obra en

conjunto del recurso ante el Tribunal de Circuito. En una carta fechada 28 de junio de 1994, la doctora Cuevas expresa que luego de examinar a la menor R.K.L.C., encontró que es una niña despierta, con un vocabulario adecuado para su edad, bien desarrollada y en buen estado de salud. Asimismo, recomienda que el proceso de adopción debe ser agilizado por el bienestar presente y futuro de la menor. Como se puede apreciar, en realidad esta carta no es un informe per se, sino más bien una recomendación de que se dilucide lo más pronto posible si la señora León Cruz va a tener la custodia permanente de sus hijas, o si por el contrario, se le va a dar curso a las peticiones de adopción presentadas.[4] El resto de los argumentos esbozados por las partes sobre la rehabilitación de la señora León Cruz, si su hogar es el mejor para el desarrollo de las menores, o si tiene algún trastorno psicológico, son solo alegaciones de las cuales no se ha presentado prueba alguna ante este Tribunal. Es por esto, y teniendo en cuenta que las menores ya se estaban relacionando con su madre biológica mediante un plan permanente y de pases y aproximaciones sucesivas bajo la supervisión del Departamento de la Familia, que consideramos que se excedió el Tribunal de Circuito al suspender las visitas según habían sido establecidas. El Tribunal de Primera Instancia es el foro apropiado para recibir toda la prueba testifical, pericial o documental que sea pertinente para determinar cuál es el efecto, si alguno, que tiene este plan de visitas en la salud y bienestar de las menores. Recalcamos que es el deber del Tribunal de Primera Instancia, así como del Departamento, velar por el bienestar y seguridad de las menores por encima de cualquier otro tipo de consideración, según es y ha sido la política pública del Estado desde la década pasada. Debemos destacar

---

autos en el Tribunal de Primera Instancia, pero de la cual no se le proveyó copia a este Tribunal.

[4] En específico, esta carta expresa lo siguiente: "[R.K.L.C.] está ahora atravesando los [tres] 3 años más importantes dentro del desarrollo de la confianza básica. Es importante que no se le confunda con dos madres, así pues, si su mamá biológica no ha podido desde su nacimiento hasta el presente darle los cuidados que una niña necesita, se debe

que la señora León Cruz aún ostenta la patria potestad sobre las menores R.K.C.L. y E.K.L., lo que conlleva ciertos derechos y obligaciones. Además, es un derecho indiscutible el que tienen los hijos menores de conocer y relacionarse con sus padres biológicos. Véase _Hidalgo_ v. _Depto. Servicios Sociales_, supra. Por último, hacemos constar que no hemos encontrado en el expediente de este caso indicio alguno que el plan de visitas supervisadas que se estaba llevando a cabo envuelva algún tipo de riesgo para las menores.

En consecuencia, no amerita en estos momentos que se suspendan las visitas que se estaban llevando a cabo entre la señora León Cruz y sus hijas biológicas R.K.C.L. y E.K.L. Sin embargo, debemos señalar que los reclamos hechos por los padres de crianza sobre la condición de la señora Cruz León y su efecto sobre las menores deben ser atendidos prioritariamente por el tribunal de instancia, que es el foro apropiado para dirimir este tipo de controversia que gira principalmente en torno a hechos.

III

Procede que discutamos la corrección de la determinación del Tribunal de Circuito de mantener su jurisdicción sobre este caso y de que las partes acudan bajo el mismo caso y epígrafe ante dicho tribunal de surgir cualquier controversia adicional.

Mediante el Plan de Reorganización Núm. 1 de la Rama Judicial de 1994, conocido como la Ley de la Judicatura de Puerto Rico de 1994, 4 L.P.R.A. sec. 22 et seq., se creó el Tribunal de Circuito de Apelaciones como un tribunal intermedio entre el Tribunal Supremo y el Tribunal de Primera Instancia. Art. 4.001 de la Ley de la Judicatura, 4 L.P.R.A. sec. 22j. A dicho Tribunal se le dio competencia para entender en recursos de apelación, de certiorari y de revisión, según sea el caso, de controversias surgidas en los tribunales de primera instancia o en los diversos organismos administrativos. Art. 4.002 de la Ley de la Judicatura, 4 L.P.R.A. sec. 22k.

El Tribunal de Circuito, como todo tribunal en Puerto Rico, goza de la característica de ser uno rogado. Esto significa que para entrar a resolver las controversias surgidas en los diferentes procesos judiciales, las partes que tengan interés y derecho tienen por necesidad que pedirle a este tribunal que intervenga. Esto se logra mediante la presentación oportuna de los diferentes recursos de apelación, certiorari o revisión. Asimismo, es necesario que dichos recursos sean perfeccionados según lo exigen la ley y el Reglamento del Tribunal de Circuito.

---

agilizar el proceso de adopción lo antes posible por el bienestar presente y futuro de [R.K.L.C.]".

El presentar un recurso de certiorari de casos civiles en el Tribunal de Circuito, no acarrea automáticamente la paralización de los procedimientos en el tribunal de instancia. Para que esto ocurra, es necesario una actuación afirmativa del Tribunal de Circuito, a saber: (1) que expida el auto de certiorari solicitado, excepto en el caso que se revise una resolución u orden al amparo del Art. 4.002 (f) de la Ley de la Judicatura de 1994, 4 L.P.R.A. sec. 22k(f); (2) que emita una orden, ya sea motu proprio o a solicitud de parte, para paralizar.

En cuanto a los recursos de apelación en casos civiles, la Ley de la Judicatura de 1994 dispone que, una vez se presente dicho recurso, los procedimientos quedarán suspendidos en el foro de instancia. Claro está, el Tribunal de Circuito, motu proprio o a solicitud de parte, puede dejar sin efecto la paralización, de ser necesario. A pesar de esto, cualquier cuestión que no esté comprendida en la apelación podrá seguir considerándose en el Tribunal de Primera Instancia.

Las normas enunciadas anteriormente en cuanto a los recursos de certiorari o apelación en casos civiles no son absolutas. Dispone el Reglamento del Tribunal de Circuito que no se suspenderán los efectos de una decisión apelada o recurrida, salvo orden en contrario, en las siguientes situaciones: (1) una orden de injunction, de mandamus o de hacer o desistir; (2) una orden de pago de alimentos; (3) una orden de custodia o relaciones filiales. Reglas 18(2) y 35 (A)(3) del Reglamento del Tribunal de Circuito, 4 L.P.R.A. Ap. XXII-A.

Una vez se paralizan los procedimientos en el foro de instancia, éste pierde su jurisdicción para continuar atendiendo los asuntos relacionados a las controversias planteadas en el Tribunal de Circuito. Si el tribunal de instancia resolviese o actuase sobre algún asunto paralizado, dicha actuación sería nula. Para que el tribunal de inferior jerarquía adquiera nuevamente jurisdicción, es decir, poder y facultad para continuar con los procedimientos, es necesario que el Tribunal de Circuito le remita el mandato correspondiente.[5]

> The mandate is directed to the district court, which upon receipt of the mandate can take whatever further proceedings are appropriate or necessary in light of the mandate. Until the mandate issues, however, the case ordinarily remains within the jurisdiction of the court of appeals and the district court lacks power to proceed further with respect to the matters involved with the appeal. Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 2d, sec. 3987, págs. 687-88 (1996).

De la misma forma, una vez se remite el mandato por el Secretario del Tribunal de Circuito, el caso que estaba ante la consideración de dicho foro concluye para todos los fines. Así, el tribunal inferior adquiere la facultad de continuar con los procedimientos según lo que haya dictaminado el tribunal apelativo.

---

[5] "El propósito principal del mandato es lograr que el tribunal inferior actúe en forma consistente con los pronunciamientos [del tribunal apelativo]". Pueblo v. Tribunal de Distrito, 97 D.P.R. 241, 247 (1969).

En el caso de autos, el Tribunal de Circuito resolvió que iba a mantener jurisdicción sobre los casos consolidados.[6] Esta determinación no se ajusta al esquema procesal establecido por la Asamblea Legislativa en la Ley de la Judicatura de 1994, ya que una vez una parte con derecho acude al Tribunal de Circuito y logra que se paralicen los procedimientos en el foro de instancia, este último foro pierde la facultad de resolver y adjudicar controversias relacionadas con lo planteado en el foro apelativo. De la misma manera, una vez el foro apelativo resuelve y remite el mandato, no puede mantener indefinidamente el caso ante su consideración, ya que por el momento pierde la facultad de adjudicar controversias en el mismo y le compete, entonces, al foro de instancia continuar con los procedimientos.

Si surgiere cualquier controversia nueva que ameritase la intervención del Tribunal de Circuito, las partes procederán a acudir a dicho foro presentando el recurso apropiado. Le corresponderá a la oficina de Secretaría del Tribunal de Circuito asignarle un número control al recurso. Asimismo, las partes acudirán al Circuito Regional correspondiente, que en el presente caso será el mismo que resolvió las controversias de las cuales se recurre aquí, ya que los casos se consolidaron y se remitieron al Tribunal de Primera Instancia, Sala Superior de Bayamón.

De surgir cualquier otra controversia, le tocará al Tribunal de Circuito, Circuito Regional de Bayamón, ejercer su jurisdicción apelativa en ese momento, una vez así le sea pedido. Serán los jueces que en ese momento compongan dicho panel a los que les competerá entender en las controversias que se planteen. Dichos jueces podrán ser los mismos que hoy componen el panel de Bayamón o podrán ser otros, a tenor con la designación administrativa que se haga, según lo dispone el Art. V, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., tomo 1.

Además, es preciso señalar que el sistema judicial de Puerto Rico es uno unificado en cuanto a jurisdicción, por lo que le compete al Tribunal de Circuito, como tribunal, entender en las controversias que se presenten ante su consideración. Qué jueces en específico van a entender en un recurso es una consideración meramente administrativa, que no debe incidir sobre la resolución de los casos.

En fin, no puede el Tribunal de Circuito mantener su jurisdicción sobre un caso una vez ha resuelto todas las controversias que tenía ante su consideración y le remite el mandato al foro de instancia con instrucciones específicas de cómo continuar con los procedimientos. Actuar de otra manera crearía caos y desasosiego en la administración y resolución de los casos, ya que una vez estos son resueltos en un foro en específico, quedarían ante la consideración de ese mismo foro y se tendría la dicotomía de un foro de primera instancia y un foro apelativo con jurisdicción para entender en un mismo asunto a la vez, sin que exista ninguna controversia real ante el susodicho foro apelativo.

Por los fundamentos antes expuestos, se expide el auto de certiorari y se modifica la sentencia del Tribunal de Circuito de Apelaciones de 30 de septiembre de 1996 para eliminar de la parte dispositiva lo concerniente al cese de las visitas supervisadas de la señora León Cruz a sus hijas R.K.L.C. y E.K.L. Se elimina, también, lo dispuesto en torno a mantener jurisdicción sobre los casos consolidados y que de tener alguna de las partes que recurrir en alzada de cualquier

---

[6] Según surge del expediente, mediante una resolución de 29 de abril de 1996, el Tribunal de Circuito paralizó los procedimientos en el

situación surgida, lo hará utilizando el mismo caso y el mismo epígrafe. Así modificada, se confirma la sentencia recurrida.


                                    Miriam Naveira de Rodón
                                    Juez Asociada

situación surgida, lo hará utilizando el mismo caso y el mismo epígrafe. Así modificada, se confirma la sentencia recurrida.

Tribunal de Primera Instancia.

EN EL TRIBUNAL SUPREMO DE
PUERTO RICO

Miriam Pérez Suárez

Ex parte

    Recurrida

     v.                     Núm. CC-96-462

Departamento de la Familia,
Procuradora Especial de
Relaciones de Familia

    Recurrida

---

Miriam Santos Torres y
Angel López Taveras

    Recurridos

     v.

Lydia León Cruz

    Peticionaria

---

SENTENCIA

San Juan, Puerto Rico, a 17 de febrero de 1999

    Por los fundamentos antes expuestos, se expide el auto de certiorari solicitado y se modifica la sentencia del Tribunal de Circuito de Apelaciones de 30 de septiembre de 1996 para eliminar, de la parte dispositiva, lo concerniente al cese de las visitas supervisadas de la señora León Cruz con sus hijas R.K.L.C. y E.K.L. Se elimina, también, lo dispuesto en torno a mantener jurisdicción sobre los casos consolidados y que de tener algunas de las partes que recurrir en alzada de cualquier situación surgida, lo hará utilizando el mismo caso y el mismo epígrafe. Así modificada, se confirma la sentencia recurrida.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió opinión disidente. El Juez Asociado señor Fuster Berlingeri no intervino.

Isabel Llompart Zeno

Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miriam Pérez Suárez,              *
Ex-parte                          *
                                  *
     Recurrida                    *
                                  *
          vs.                     *
                                  *
Departamento de la Familia        *
Procuradora Especial de           *
Relaciones de Familia             *
                                  *
     Recurrida                    *
* * * * * * * * * * * * * * * *   *   CC-96-462      CERTIORARI
Miriam Santos Torres y Angel      *
López Taveras                     *
                                  *
     Recurridos                   *
                                  *
          vs.                     *
                                  *
Lydia León Cruz                   *
                                  *
     Peticionaria                 *
* * * * * * * * * * * * * * * *

     OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

     En San Juan, Puerto Rico, a 17 de febrero de 1999

     La Opinión mayoritaria emitida en el presente caso enfatiza, y recalca, "...que es el deber del Tribunal de Primera Instancia, así como del Departamento [de la Familia], velar por el bienestar y seguridad de las menores [en controversia] por encima de cualquier otro tipo de consideración, según es y ha sido la política pública del Estado desde la década pasada." (Enfasis suplido.)

     Ello no obstante, desde este estrado apelativo y sin ninguna clase de "expertise" en la materia, la Mayoría resuelve que "...no amerita en estos              momentos              que              se

suspendan las visitas que se estaban llevando a cabo entre la Sra. León Cruz y sus hijos biológicos....". No podemos estar de acuerdo; consideramos que la acción tomada por el Tribunal de Circuito de Apelaciones —a los efectos de ordenar la suspensión de dichas visitas hasta que el tribunal de instancia, previa vista al efecto, pueda determinar si las mismas son beneficiosas, o noscivas, para dichas menores— es un curso de acción mucho más sabio y correcto.

No podemos olvidar el hecho de que se trata de una persona —la madre— que ha sido adicta a las drogas por muchos años, y que, hasta el momento presente, no ha podido liberarse de su adicción. De otro lado, tenemos dos matrimonios serios y responsables que están en disposición de adoptar a dichas niñas. No sabemos —por razón de no ser peritos en la materia— si las referidas visitas le pueden causar, o no, daño a dichas menores y/o a la relación establecida entre ellas y las personas que solicitan adoptarlas .

Si es que en realidad el bienestar y seguridad de las referidas menores va por encima de cualquier otra consideración, entonces no entendemos el por qué no ordenamos, como lo hizo el Tribunal de Circuito, que dichas visitas queden temporalmente suspendidas hasta tanto el foro de instancia celebre una vista evidenciaria y, entonces, determine qué es lo mejor y lo más conveniente para el bienestar de dichas menores: 1) si declarar con, o sin, lugar las peticiones de adopción; 2) si ello no obstante, las visitas a la madre biológica deben, o no, continuar; 3) etc.

En otras palabras, ambas cuestiones —la procedencia de las solicitudes de adopción y la de las visitas de la madre biológica— podrían ser resueltas a base de la celebración de una sola, o única, vista evidenciaria. Ello no solo resulta en una clara economía procesal sino que garantiza, dentro de lo que humanamente se puede, el bienestar y seguridad de las menores; bienestar que es nuestra mayor prioridad.

FRANCISCO REBOLLO LOPEZ
**Juez Asociado**

FRANCISCO REBOLLO LOPEZ
**Juez Asociado**