EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sucesión de Alcides Ríos Jordán<br><br>Recurridos<br><br>v.<br><br>Javier Ríos Jordán y otros<br><br>Peticionarios<br><br>Sucesión de Alcides Ríos Jordán<br><br>Recurridos<br><br>v.<br><br>Javier Ríos Jordán y otros<br><br>Peticionarios<br><br>Antonia Jordán Maldonado<br><br>Recurrida | 2026 TSPR 38<br><br>218 DPR ___ |

Número del Caso: CC-2024-0804

Fecha: 15 de abril de 2026

Representante legal de la parte peticionaria:

Lcdo. Arcelio Acisclo Maldonado Avilés II

Materia: Resolución del Tribunal con Voto particular disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sucesión de Alcides Ríos Jordán<br><br>Recurridos<br><br>v.<br><br>Javier Ríos Jordán y otros<br><br>Peticionarios | |
| Sucesión de Alcides Ríos Jordán<br><br>Recurridos<br><br>v.<br><br>Javier Ríos Jordán y otros<br><br>Peticionarios<br><br><br>Antonia Jordán Maldonado<br><br>Recurrida | CC-2024-0804 |

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 15 de abril de 2026.

A la *Urgente Moción de Ejecución de Sentencia y en Auxilio de Jurisdicción* presentada por los peticionarios, *no ha lugar* porque el Tribunal está igualmente dividido.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal. La Jueza Presidenta Oronoz Rodríguez, y los Jueces Asociados señor Martínez Torres, señor Kolthoff Caraballo, y señor Feliberti Cintrón proveerían *no ha lugar* por falta de jurisdicción.

El Juez Asociado señor Martínez Torres emite la expresión siguiente a la cual se une el Juez Asociado señor Feliberti Cintrón:

Los tribunales apelativos gozan de jurisdicción en circunstancias específicas. La jurisdicción general la tiene el Tribunal de Primera Instancia. La razón es evidente: Se ordena adecuadamente la intervención judicial para que se litigue en un solo foro a la vez. En el foro primario se atienden todas las controversias de un caso, incluyendo la ejecución de los dictámenes que emiten los tribunales. La intervención apelativa es limitada, por definición. Por ello, nuestros dictámenes se ejecutan en el foro primario y no aquí. El mandato refiere el caso de vuelta a ese foro para que atienda las instrucciones del foro apelativo. Si surgen diferencias entre las partes sobre la interpretación de nuestro mandato, esa es una controversia posterior, revisable por los canales ordinarios, en este caso el *certiorari*. Devuelto el mandato, este Tribunal carece de autoridad para intervenir. <u>Piazza v. Isla del Río, Inc.</u>, 158 DPR 440, 456 (2003).

Lamento ver cómo conceptos loables como "acceso a la justicia" y "economía procesal" se usan como si operaran en el vacío, ajenos a la autoridad de los tribunales. La existencia de jurisdicción es imprescindible para accesar a los tribunales y sujetar a las partes a un proceso judicial justo, rápido, económico y, sobre todo, vinculante. Sin eso, nuestra intervención sería arbitraria y el mandato se reduciría a una notificación más, sin efectos jurisdiccionales. Así, mañana estaríamos considerando órdenes de embargo y recibiendo prueba en la etapa de ejecución en el Tribunal Supremo y en el Tribunal de Apelaciones.

Parece que esa es la nueva visión de "economía procesal" que se nos propone; no la de un tribunal apelativo con jurisdicción limitada a las controversias planteadas dentro de cada recurso que atiende, sino la de un foro omnímodo con facultades extrajurisdiccionales de supervisión en cada caso. Como no somos un "tribunal de todas las instancias" y nuestra jurisdicción no es un asunto arbitrario ni es determinada por la economía procesal o por el acceso a la justicia, voto para denegar la moción de ejecución presentada.

La Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Estrella Martínez, la Jueza Asociada Rivera Pérez y el Juez Asociado señor Candelario López disienten.

El Juez Asociado señor Candelario López emite un voto particular disidente al cual se une el Juez Asociado señor Estrella Martínez.

El Juez Asociado señor Colón Pérez no intervino.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sucesión de Alcides Ríos Jordán<br><br>Recurridos<br><br>v.<br><br>Javier Ríos Jordán y otros<br><br>Peticionarios<br><br>Sucesión de Alcides Ríos Jordán<br><br>Recurridos<br><br>v.<br><br>Javier Ríos Jordán y otros<br><br>Peticionarios<br><br>Antonia Jordán Maldonado<br><br>Recurrida | CC-2024-0804 |

Voto particular disidente emitido por el Juez Asociado Señor CANDELARIO LÓPEZ al cual se une el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 15 de abril de 2026.

En esta ocasión teníamos la oportunidad de validar la jurisdicción de esta Curia para compeler el cumplimiento de los mandatos que emite, actuando en concordancia con nuestro llamado a garantizar una solución justa, rápida y económica de todo procedimiento judicial. Lamentablemente, hoy, por estar igualmente dividido, este Tribunal está impedido de intervenir en el asunto ante nuestra consideración, alejándonos del principio rector de la economía procesal y

el acceso a la justicia. Por entender que existe una distinción entre la jurisdicción para atender un asunto en sus méritos y la facultad para que esta Curia haga valer su mandato, respetuosamente disentimos. Veamos.

I

El caso de epígrafe tiene su origen en una disputa familiar que surge a raíz de una *Demanda* por cobro de dinero en contra del señor Javier Ríos Jordán, su esposa Luz Yanira Díaz y la Sociedad Legal de Gananciales compuesta por ambos (peticionarios o parte peticionaria).[1] En extrema síntesis, en su petitorio, los demandantes alegaron que la parte peticionaria se había apropiado indebidamente de un dinero producto de un negocio establecido por su madre y por su difunto padre. No obstante, la disputa original no forma parte del asunto que nos concierne.

En lo pertinente a la controversia que nos ocupa, el 11 de junio de 2019, la parte peticionaria notificó un interrogatorio a la señora Yeidee Ríos Maldonado (señora Ríos Maldonado), el cual fue contestado a finales del próximo mes. Inconforme con las contestaciones brindadas, el 29 de enero de 2020, la parte peticionaria presentó una moción mediante la cual alegó que estas no habían sido contestadas adecuadamente. En específico, **solicitó al Tribunal de Primera**

---

[1]    El recurso fue identificado como LCD2015-0052, presentado en el Tribunal de Primera Instancia de Utuado, y atendido por el Hon. Víctor D. de Jesús Cubano. La parte demandante consistió en el señor Alcides Ríos Jordán, su esposa Sonia Maldonado Ayala y la Sociedad Legal de Gananciales compuesta por ambos.

El 15 de agosto de 2023, tras la muerte del señor Alcides Ríos Jordán, el foro primario ordenó la sustitución de parte a los herederos del fenecido. La sucesión del señor Alcides Ríos Jordán está integrada por Yeidee Ríos Maldonado, Sonia Ríos Maldonado, Joel Ríos Maldonado y Sonia Maldonado Ayala, quienes figuran como la parte demandante en el caso LCD2015-0052, y **recurridos** en el caso de epígrafe.

**Instancia (TPI) que le ordenara a la señora Ríos Maldonado contestar el interrogatorio de forma responsiva, y proveer la evidencia documental requerida.** Así, **el TPI ordenó a las partes a reunirse para discutir las controversias relacionadas al interrogatorio.**[2]

El 7 de agosto de 2020, la parte peticionaria presentó una **segunda moción** con los mismos reclamos, e indicó que habían transcurrido catorce meses sin que la señora Ríos Maldonado cumpliera con el deber legal de contestar responsivamente las preguntas del pliego y producir la evidencia requerida. Por tanto, **solicitó la eliminación de las alegaciones de esta, como sanción por su inobservancia y desatención al ordenamiento procesal civil.** Evaluada la moción, **el TPI impuso una sanción** de $100.00 a la señora Ríos Maldonado por no cumplir con lo ordenado, e indicó que por la manera en que se presentó el juramento al interrogatorio, no había constancia de que este formara una sola unidad con las presuntas contestaciones. Ante ello, le **ordenó que notificara adecuadamente las contestaciones al pliego, y una vez cumplida la orden, estaría en posición para resolver la controversia sobre la presunta insuficiencia de las contestaciones.**

Ante la falta de respuestas por la señora Ríos Maldonado, el 22 de octubre de 2020, la parte peticionaria presentó una **tercera moción,** y arguyó que, ante el claro menosprecio a la autoridad del Tribunal, procedía que el TPI implementara los mecanismos establecidos por la Regla 34.3(b)

---

[2] Esta *Orden* fue emitida por el Hon. Vance E. Thomas Rider, a quien se le reasignó el caso mediante *Orden* notificada el 1 de julio de 2019.

de Procedimiento Civil. Al día siguiente, **el foro primario concedió diez días a la señora Ríos Maldonado para mostrar causa por la cual no se debía conceder el remedio solicitado por los peticionarios.**

Transcurrido el término, el 18 de noviembre de 2020, la parte peticionaria presentó una **cuarta moción**, e indicó que las sanciones y órdenes dictadas por el TPI no habían sido suficientemente disuasivas para que la señora Ríos Maldonado suministrara las respuestas debidamente suscritas y juramentadas. Ante el reiterado incumplimiento de su deber de descubrir prueba, reiteró su petitorio. En consecuencia, el TPI le **impuso una sanción de $200.00, le concedió un término final de treinta días para notificar adecuadamente las contestaciones al interrogatorio, y además, le apercibió que el incumplimiento de lo ordenado conllevaría la eliminación de sus alegaciones.**

Así las cosas, el 18 de febrero de 2021, la señora Ríos Maldonado presentó su segunda *Contestación al pliego de interrogatorio, producción de documentos y requerimientos de admisiones*. No obstante, en esta ocasión surgió controversia en cuanto a la firma del juramento adjunto. Ante ello, el TPI notificó que le concedería veinte días para explicar la diferencia evidente entre las presuntas firmas de los juramentos de las contestaciones de interrogatorios presentadas el 29 de julio de 2019 y 18 de febrero de 2021, respectivamente. Además, **volvió a apercibirle que el incumplimiento con esta orden conllevaría la eliminación de sus alegaciones.**

Veintiséis días después de ser notificada, la señora Ríos Maldonado compareció y aseguró que ambas firmas eran suyas y fueron realizadas ante el mismo notario. En consecuencia, el TPI sostuvo que, a pesar de su modesta tardanza para cumplir con lo ordenado, no eliminaría sus alegaciones. Además, citó a las partes a una vista probatoria, a celebrarse el 22 de junio de 2021, para que la señora Ríos Maldonado prestara testimonio única y exclusivamente sobre la aparente divergencia entre las presuntas firmas.[3] Tras varias incidencias procesales en donde se pospuso la referida vista, el TPI señaló la vista para el 18 de mayo de 2023. Indicó que su celebración era de suma importancia ya que lo resuelto conllevaría consecuencias para la señora Ríos Maldonado.[4] Sin embargo, llegado el día, la vista no fue celebrada.

Posteriormente, el 14 de diciembre de 2023, el TPI señaló una vista probatoria y vista de estatus para el 19 de enero de 2024.[5] De la *Minuta Resolución* surge que, en este día, solamente se celebró la vista de estatus y se discutieron las reiteradas objeciones de los peticionarios a la insuficiencia de las contestaciones. A su vez, el TPI concedió a las partes hasta el 9 de febrero de 2024 para informar por escrito lo que quedara pendiente sobre el

---

[3] El 17 de junio de 2021, el Hon. Vance E. Thomas Rider ordenó que se reseñalara la vista probatoria para el 20 de agosto de 2021. Esta fue la primera de muchas ocasiones donde se pospuso la referida vista.
[4] El referido planteamiento surge de la *Minuta* con fecha de 1 de marzo de 2023 que obra en el expediente.
[5] Esta orden fue emitida por el Hon. Rafael Pérez Medina, a quien se le reasignó el presente caso el 21 de noviembre de 2023. Previo a ello, el caso fue reasignado al Hon. Pablo J. Oller López, mediante *Orden* fechada el 15 de septiembre de 2023.

descubrimiento de prueba.[6] Finalmente, el 9 de mayo de 2024, el TPI dio por terminado el descubrimiento de prueba del litigio, y especificó que solo quedaba pendiente una deposición a la Sra. Antonia Jordán Maldonado para efectos de preservar su testimonio, **y la vista probatoria para determinar si la señora Ríos Maldonado cumplió con los requisitos de contestar el interrogatorio en cuestión.**

Inconforme, la parte peticionaria solicitó la reconsideración de dicha determinación. Alegó que el dictamen del foro primario era contrario al estado procesal del caso, ya que del expediente surgía con claridad que existía descubrimiento de prueba pendiente que no se había podido llevar a cabo por razones ajenas a su voluntad. En específico, alegó haber sido extremadamente diligente al dejar constancia en el expediente de que quedaba pendiente un descubrimiento de prueba esencial para poder defenderse de la reclamación incoada en su contra. Sin embargo, el TPI declaró *no ha lugar* la moción.

Insatisfecha, la parte peticionaria acudió al Tribunal de Apelaciones (TA) y presentó un recurso de *Certiorari* en donde expuso los mismos argumentos señalados en su moción de reconsideración. No obstante, el TA denegó la expedición del recurso, por razón de estar impedido de intervenir en una controversia sobre descubrimiento de prueba, sin demostrarse un fracaso irremediable a la justicia.

---

[6] Tras una detenida evaluación del expediente, ninguna de las partes informó por escrito lo solicitado.

Nuevamente en desacuerdo, la parte peticionaria presentó un recurso de *Certiorari* ante nos y esbozó el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE APELACIONES AL DECLINAR REVISAR AL TPI QUE DETERMINAR DAR POR CULMINADO EL DESCUBRIMIENTO DE PRUEBA PENDIENTE EN CONTRA DE LA LEY DEL CASO, DE SUS PROPIAS DETERMINACIONES FINALES Y FIRMES, ABUSANDO DE SU DISCRECIÓN, ERRANDO EN LA APLICACIÓN DE LA NORMA Y VIOLANDO EL DEBIDO PROCESO DE LEY.

Examinado el recurso, el 19 de diciembre de 2025 **emitimos una *Sentencia* en la cual revocamos la *Orden* del 9 de mayo de 2024, por entender que constituiría un fracaso irremediable a la justicia el que se diera por terminado el descubrimiento de prueba de los peticionarios sin antes resolver la presunta insuficiencia de las contestaciones al interrogatorio remitido a la señora Ríos Maldonado.** Ante ello, mediante mandato emitido el 16 de enero de 2026, **devolvimos el caso al TPI para que atendiera la controversia**. Puesto a que la parte peticionaria había presentado cuatro mociones impugnando las contestaciones y llevaba esperando por una vista probatoria para dilucidar el asunto desde el 2021, resolvimos que el foro primario incurrió en un craso abuso de discreción al dar por culminado el descubrimiento de prueba sin haber celebrado la vista probatoria que estuvo años posponiendo.

Posteriormente, el 26 de febrero de 2026, el TPI concedió 90 días adicionales a todas las partes del pleito para realizar descubrimiento de prueba, y a su vez, indicó que no atendería la controversia sobre presunta insuficiencia de las contestaciones del interrogatorio por entender que ya había sido resuelta por el Tribunal. Ante una solicitud de

reconsideración por los peticionarios, el TPI explicó mediante *Resolución* emitida el 18 de marzo de 2026, que el efecto práctico de la revocación de la *Orden* del 9 de mayo de 2024 fue reabrir el descubrimiento para todas las partes del litigio. En lo pertinente a la controversia sobre la presunta insuficiencia a las contestaciones del interrogatorio, expresó que ya había sido resuelta en una *Resolución* fechada el 19 de julio de 2024. Por razón de que la referida *Resolución* "no fue revocada", **el TPI indicó que no atendería el asunto ordenado en nuestro mandato.**

De esta manera, la parte peticionaria presentó la moción que tenemos ante nuestra consideración, y nos solicitó que ordenemos al TPI a: (1) no abrir el descubrimiento de prueba a todas las partes, sino que solamente a ella; y (2) celebrar una vista probatoria para atender la controversia mencionada. Esto así, pues alegó que el foro primario se ha rehusado a cumplir en su totalidad con una orden emitida por este Tribunal. No obstante, hoy, por estar igualmente divididos, esta Curia está impedida de intervenir en el asunto ante nuestra consideración. Sin embargo, **consideramos que este caso invita a la reflexión sobre el desfase jurídico que representa el que una parte tenga que volver a iniciar otro procedimiento legal ante el TA para hacer valer un dictamen emitido por este Tribunal.** Nos explicamos.

**II**

Sabido es que en nuestro sistema judicial, el mandato es una orden de un tribunal de superior jerarquía a uno inferior, mediante la cual se le notifican los términos de

su sentencia, tras haber revisado el caso en apelación. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 300-301 (2012). De esta manera, el mandato es el medio oficial que utiliza un foro apelativo para comunicar su dictamen al tribunal inferior y ordenar su cumplimiento. Íd., pág. 301, citando a *Pueblo v. Tribunal de Distrito*, 97 DPR 241, 246 (1969). En otras palabras, su propósito principal es lograr que el foro inferior actúe de acuerdo con los pronunciamientos del tribunal apelativo. Íd. Así pues, el dictamen emitido por un tribunal de mayor jerarquía no da base a sugerencias o flexibilidad en cuanto a la orden a seguir por el foro inferior, siendo esta una rígida y definitiva. Íd., pág. 301.

En el ámbito federal, la doctrina del mandato es conocida como el *mandate rule*, y en esencia establece que las decisiones del foro apelativo constituyen la ley del caso. A saber, el tratadista James Moore nos comenta que:

> [T]he nondiscretionary aspect of the law of the case doctrine is sometimes called the "mandate rule" and this terminology is more precise than the phrase "law of the case". On remand, the doctrine of the law of the case is rigid; the district court owes obedience to the mandate of the Supreme Court or the court of appeals and must carry the mandate into effect according to its terms. Íd., pág. 302, citando a J. W. Moore, *Moore's Federal Practice*, 3era ed, Ed. Mathew Bender & Company, Inc., sec. 134.23(1)(a), pág. 134-58 (2011).

Al amparo de esta doctrina, además de estar impedida de manejar y adjudicar el caso de manera inconsistente al mandato del foro superior, la corte inferior no podrá considerar asuntos que fueron atendidos explícita e implícitamente por el mandato. Es decir, el foro que recibe

el mandato, además de estar impedido de reconsiderar asuntos que surgen de la sentencia y sin espacio a ambivalencias, tampoco puede atender aquellas cuestiones que se desprenden del mandato mismo, así como aquellas que se deben realizar para que resulte efecto el mandato. *Mejías et al. v. Carrasquillo et al.*, *supra*, pág. 302-303.

En el caso ante nos, esta Curia le ordenó al TPI atender una controversia sobre la presunta insuficiencia de las contestaciones al interrogatorio remitido a la señora Ríos Maldonado. En contravención con nuestro dictamen, el foro primario indicó haberla resuelto mediante una *Resolución* que no fue revocada en nuestra *Sentencia*, por lo cual no era necesaria la celebración de una vista probatoria a esos efectos. Es decir, el Tribunal Supremo emitió un mandato definitivo, y en vez de actuar conforme a sus pronunciamientos, el foro primario optó por alejarse de nuestro dictamen.

De esta manera, sabido es que la inconformidad con las decisiones judiciales no se limita a las partes, sino que hay ocasiones en que los jueces y juezas de foros inferiores están inconformes con las decisiones tomadas por un foro de mayor jerarquía. Este desagrado se puede manifestar expresamente por la vía de la palabra, al igual que con acciones u omisiones reflejadas en el trámite del caso. Véase, *In re Candelaria Rosa*, 197 DPR 445 (2017). Sin embargo, es preocupante que una inconformidad tenga las consecuencias de obligar a las partes a tener que acudir al TA, por vía del *certiorari*, para validar lo que este Tribunal

ordenó con anterioridad. Por el contrario, **somos del criterio de que esta Curia tiene la facultad de hacer cumplir su mandato sin la necesidad de la intervención previa por el foro apelativo intermedio.**

La implicación procesal que tiene la emisión de un mandato es que, una vez este se remite por el Secretario del Tribunal pertinente, el caso que estaba ante su consideración finaliza para todos los efectos. Íd., pág. 301. Acto seguido, el foro inferior adquiere la facultad de continuar con los procedimientos, de manera consistente con lo resuelto por el foro de mayor jerarquía. Íd., citando a *Pérez, Ex parte v. Depto. De la Familia*, 147 DPR 556, 571, (1999). Es decir, cuando se remite un mandato a un tribunal inferior, este readquiere jurisdicción sobre el caso, a los únicos fines de ejecutar la sentencia, tal como fue emitida en apelación. *Mejías et al. v. Carrasquillo et al.*, *supra*, pág. 301. Así, **justipreciamos que, como Máximo Foro y propulsor de la economía procesal en nuestro ordenamiento jurídico, es el Tribunal Supremo quien debe compeler el cumplimiento de sus mandatos si una parte así lo solicita.** De esta manera, continuamos garantizando una solución justa, rápida y económica para todas las partes.

Para ello, es menester que hagamos la distinción entre la jurisdicción para atender un asunto en sus méritos, y por otra parte, la autoridad que tiene el Tribunal Supremo para compeler el cumplimiento de su mandato. De ordinario, un tribunal apelativo pierde jurisdicción sobre las controversias de un caso tan pronto expide su mandato, y

solamente en circunstancias excepcionales puede válidamente ordenar la devolución de este con el propósito de modificarlo. *Piazza v. Isla del Río, Inc.*, 158 DPR 440, 456 (2003). Sin embargo, la facultad para hacer cumplir el mandato en nada incide con los pronunciamientos del dictamen ni el caso en sus méritos, sino con la potestad del máximo foro de hacer valer lo que en su momento ordenó.

En fin, por las razones antes expuestas, difiero del criterio de varios de mis compañeros de estrado en cuanto a la falta de jurisdicción de esta Curia para hacer cumplir sus propios mandatos. Pudiendo haber intervenido sobre el reclamo de una parte para compeler el cumplimiento de nuestro dictamen, nos alejamos del principio rector de acceso a la justicia y economía procesal. En consecuencia, descansamos en que el foro apelativo intermedio emita juicio sobre el mandato de un foro superior como el nuestro.


                              Raúl A. Candelario López
                                   Juez Asociado