

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Diego E. Mejías Montalvo, et al.<br><br>Recurridos<br><br>v.<br><br>Rafael Carrasquillo Martínez, et al.<br><br>Peticionarios | Certiorari<br><br>2012 TSPR 62<br><br>185 DPR ____ |

Número del Caso: CC-2010-800

Fecha: 3 de abril de 2012

Tribunal de Apelaciones:

      Región Judicial Bayamón, Panel VI

Abogado de la Parte Peticionaria:

      Por derecho propio

Abogado de la Parte Recurrida:

      Lcda. Irma S. Nieves García

Materia: Cumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Diego E. Mejías Montalvo, *et al.*
Recurridos

v.

Rafael Carrasquillo Martínez, *et al.*
Peticionarios

Certiorari

CC-2010-0800

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 3 de abril de 2012.

Comparece el peticionario, Sr. Rafael Carrasquillo Martínez, y nos solicita que revoquemos una Resolución emitida por el Tribunal de Apelaciones en la cual denegó el recurso de *certiorari* presentado ante su consideración. En este, solicitó al foro apelativo intermedio que ordenara al Tribunal de Primera Instancia a cumplir con el mandato que esta Curia emitió el 17 de noviembre de 2008.[1] Mediante ese dictamen revocamos una sentencia dictada por el foro apelativo intermedio y, como consecuencia, se dejó sin efecto la sentencia sumaria emitida por el foro de instancia de 22 de octubre de 2007. Posteriormente,

_____

[1] *Diego Mejías Montalvo v. Rafael Carrasquillo Martínez*, CC-2008-463, resuelta el 17 de noviembre de 2008.

ese tribunal mediante Resolución determinó que el mandato de esta Curia no revocó completamente su dictamen.

Ante el alegado incumplimiento por parte del foro primario, este recurso de *certiorari* nos brinda la oportunidad de expresarnos sobre la doctrina del mandato judicial. En específico, debemos pronunciarnos si de acuerdo a esta figura jurídica, el Tribunal de Primera Instancia estaba obligado a acatar nuestra orden y determinación.

En ese contexto, pasemos a delinear los antecedentes fácticos pertinentes al caso de autos.

I

El 28 de mayo de 2004 la Sra. Sonia J. Mejías Franqui presentó ante el Tribunal de Primera Instancia una demanda sobre liquidación de la sociedad de bienes gananciales surgida entre ella y su ex cónyuge, el Lcdo. Rafael Carrasquillo Martínez. En la vista con antelación al juicio, la representación legal de la señora Mejías indicó que el peticionario no había contestado el interrogatorio suministrado, incumpliendo así con la orden del tribunal. El licenciado Carrasquillo Martínez no estuvo presente en sala al momento de ser llamado el caso.

En vista de ello, el foro de instancia le impuso una multa de $300 por comparecencia tardía a la vista y por no haber contestado el interrogatorio ni la demanda. Asimismo, ordenó a las partes que consiguieran los documentos necesarios, contrataran un tasador y trataran

de llegar a un acuerdo. Advirtió además que, de ser necesario, eliminaría las alegaciones que no estuviesen apoyadas en evidencia admisible.

En cumplimiento con lo ordenado, el peticionario presentó una lista de legajos que sometería como prueba documental. De igual manera, contestó la demanda e instó una reconvención relacionada a un caso consolidado con el presente. En su escrito, el peticionario reclamó el traspaso de la titularidad de un terreno sito en Aguas Buenas, que pertenece en dominio al padre de la señora Mejías y en donde la sociedad legal de gananciales había edificado un potrero. Además, arguyó que el padre de la recurrida había acordado donar el terreno al matrimonio con la condición de que estos se encargaran de su mantenimiento y construyeran en él una estructura para ser utilizada como potrero.

Luego de varias incidencias procesales, en octubre de 2005 el peticionario presentó una moción sobre renuncia de representación legal. Esta solicitud fue concedida bajo el apercibimiento de que presentara una nueva representación legal dentro del término de quince (15) días. Transcurrido en exceso el término concedido, el 7 de noviembre de 2006, el tribunal reiteró su orden. Sin embargo, esta orden no fue cumplida. En consecuencia, el tribunal le impuso al peticionario una multa de $300 y le apercibió que de incumplir nuevamente con lo ordenado, eliminaría sus alegaciones.

Posteriormente, luego del continuado incumplimiento por parte del peticionario, el 17 de febrero de 2007 el foro primario eliminó las alegaciones contenidas en la contestación de la demanda y en la reconvención. En virtud de ello, la señora Mejías presentó una moción de sentencia sumaria. En esta arguyó que habiéndose eliminado las alegaciones del peticionario, no existían controversias genuinas sobre hechos materiales que impidieran que el tribunal dictara sentencia sin necesidad de celebrar un juicio en sus méritos.

Conforme a esto, el Tribunal de Primera Instancia dictó sentencia en la cual liquidó sumariamente la sociedad legal de bienes gananciales. Dicho foro, basado en los documentos presentados en la moción de sentencia sumaria, determinó que la sociedad legal de gananciales estaba constituida de los siguientes bienes:

| Activos | Valor |
|---|---|
| Propiedad en Urb. Hermanas Dávila | $220,000 |
| Terreno Trujillo Alto | $255,000 |
| Ford Taurus | $3,600 |
| Suzuki Vitara | $5,660 |
| Cuentas IRAS [sic] Carrasquillo | $25,518.67 |
| Cuentas IRAS [sic] Sonia Mejías | $25,518.67 |
| Ahorros AEELA Carrasquillo | $11,395.52 |
| Ahorros Mejías | $300.36 |

| | |
|---|---|
| Aportaciones Retiro Carrasquillo | sujeto a ser corroborado por orden del Tribunal |
| Acumulaciones Retiro Sonia Mejías | $25,735.46 |
| 1/3 parte acción Robero Camping, Inc. | Valor desconocido |
| Plan vacacional *Club Lagoon* | Valor desconocido |
| Bienes muebles y Enseres del hogar | Valor desconocido |
| Bote Boston Whaler | Valor desconocido |

El tribunal dividió los activos y pasivos por partes iguales entre los ex cónyuges. No obstante, en el inventario el foro primario no incluyó el potrero que, según constaba en el expediente del caso, se construyó con dinero ganancial en el terreno del padre de la señora Mejías. Por otro lado, en la liquidación se le concedió un crédito a la señora Mejías por deudas pagadas en exceso a su participación, así como por el uso exclusivo por el peticionario de un inmueble ganancial, luego de disuelta la sociedad legal de gananciales.

Inconforme, el peticionario solicitó revisión al Tribunal de Apelaciones. Este foro confirmó la sentencia del Tribunal de Primera Instancia. No conteste con esta determinación, el peticionario recurrió a este Tribunal para impugnar la determinación del foro apelativo intermedio.

El 17 de noviembre de 2008, emitimos una sentencia por la cual revocamos el dictamen del Tribunal de

Apelaciones y, a su vez, el curso decisorio del foro primario. A esos efectos, expresamos lo siguiente:

> Concluimos que el Tribunal de Primera Instancia dictó sentencia sumaria sin contar con la evidencia necesaria para adjudicar la totalidad del caso. Por consiguiente, y al amparo de la regla 50 del Reglamento del Tribunal Supremo de Puerto Rico, **expedimos el auto y revocamos la sentencia recurrida, así como la sentencia del Tribunal de Primera Instancia.** Se devuelve el caso a dicho foro para que reciba prueba en una vista evidenciaria sobre la existencia y el valor **de cada uno de los bienes** gananciales cuya división se solicita. (Énfasis nuestro.)[2]

En atención a ello, el peticionario acudió al foro primario para que celebrara una vista en la que se pudiera presentar evidencia suficiente para establecer el valor de los bienes sujetos a liquidación.

Así las cosas, el 24 de agosto de 2009 el peticionario también solicitó que se le permitiera restituir las alegaciones que le fueron eliminadas. Arguyó que, conforme a lo establecido en la Regla 45.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, procedía la restitución por haber cumplido con las órdenes del tribunal y tener disponible su representación legal. Además, sustentó que la restitución de sus alegaciones procedía como corolario del debido procedimiento de ley.

El 1 de septiembre de 2009 el Tribunal de Primera Instancia notificó una Orden mediante la cual declaró "no ha lugar" la moción bajo la Regla 45.3 de Procedimiento Civil, *supra*, presentada por el peticionario. Inconforme, este solicitó reconsideración, la cual fue denegada.

---

[2] Véase Apéndice de la petición de *certiorari*, pág. 157.

Posteriormente, el foro primario celebró una vista evidenciaria y emitió una Minuta-resolución mediante la cual dispuso, en lo pertinente, que no dejaría sin efecto la sentencia dictada sumariamente.[3]

Insatisfecho con tales determinaciones, el 1 de octubre de 2009, el peticionario acudió al Tribunal de Apelaciones por medio de un recurso de *certiorari*. En este arguyó que la sentencia emitida por esta Curia revocó la sentencia dictada sumariamente por el foro de instancia el 22 de octubre de 2007. Además, indicó que el foro primario hizo caso omiso de la orden de este Tribunal y que solo pasaría prueba de algunas de las partidas que restaba por determinar de la sociedad de gananciales, en lugar de todos los bienes que formaban parte de esta.[4]

Atendido el recurso, el Tribunal de Apelaciones, mediante Resolución notificada el 11 de junio de 2010 denegó expedir el auto de *certiorari*. Oportunamente, el licenciado Carrasquillo Martínez presentó solicitud de reconsideración, petición que fue declarada "no ha lugar".

No conteste con esa determinación, el peticionario acude ante este Tribunal mediante recurso de *certiorari* y plantea los siguientes errores:

> **Erró el T.C.A. [sic] al confundir o mal interpretar que el demandado Sr. Carrasquillo había renunciado a su representación legal allá para el 2005, según unos documentos (Minuta del 14 de septiembre de 2005 aceptando renuncia) correspondientes al Demandante en dicho caso**

---

[3] Véase Apéndice de la petición de *certiorari*, pág. 33.
[4] Véase, líneas 9-10, Transcripción de Vista de 4 de septiembre de 2010, Apéndice de la petición de *certiorari*, pág. 87.

Diego Mejías, y adjudicárselos o adscribírselos al demandado Sr. Carrasquillo, por lo que denegó el auto, entendiendo que habían transcurrido (casi 2 años- octubre 2005 hasta febrero 2007) sin cumplir la orden del T.P.I., por tanto actuó correctamente al no reinstalarle sus alegaciones.

Erró el T.C.A. [sic] al determinar que el T.P.I. estaba cumpliendo y actuando con lo dictaminado en la Sentencia dictada por el Ilustre Tribunal Supremo el 17 de noviembre de 2008, a pesar de que se sometió la transcripción de la vista del 14 de septiembre de 2009, así como la Minuta de la misma, en los cuales el T.P.I. expresa que su Sentencia sumaria dictada el 22 de octubre de 2007, *no había sido revocada* por el Supremo; y que habría de entrar a ver prueba únicamente sobre los bienes mencionados en la Sentencia Sumaria que *no tenían valores establecidos; y no como indica la sentencia de que:* "se revoca la sentencia recurrida así como la sentencia del T.P.I. y se devuelve el caso al foro para que reciba prueba en una vista evidenciaria *sobre la existencia y valor de cada uno de los bienes gananciales cuya división se solicita."* (Énfasis en original.)

Cometió error el T.C.A. [sic] al no reconocer como acto discriminatorio del tasador y que lo descalifica al presente, el hecho de haberle cursado a la Parte Demandante las tasaciones en septiembre del 2007 (con cuyos documentos la parte sometió moción de sentencia sumaria), y a la Parte Demandada se las cursó en noviembre del 2007, luego de dictada la sentencia sumaria el 22 de octubre de 2007, en adición y junto a los demás actos informados al Tribunal, ocurridos previo a depositarse el importe de los honorarios del tasador, allá para julio del 2007, permitiendo ahora que dicho tasador sea quien tase nuevamente las propiedades.

Erró el T.C.A. [sic] al determinar que el T.P.I. actuó correctamente imponiéndole únicamente al Demandado sufragar los honorarios del tasador exclusivamente al demandado y no adjudicárselos a la demandante por ser quien cometió el error de no valorar todos los bienes; y sin exigirle previamente una cotización de los servicios requeridos, como se había hecho la primera vez; así como rechazar la propuesta del demandado de que se escogiera el tasador de entre tres proponentes; y que el T.P.I. determinara valorar

**la propiedad donde reside el demandado como comercial, cuando dicha propiedad nunca ha estado en el mercado de alquiler comercial, ni se ha sometido ni tiene aprobación para ello, estando dedicada a vivienda desde la década del 1950.**

**Erró el T.C.A. [sic] al no expedir el auto para atender o pronunciarse con respecto a la determinación del T.P.I. de no permitir tasar otras dos (2) propiedades adicionales (potrero y el terreno donde está situado con las mejoras realizadas), al haberse edificado con dinero de la Sociedad de Gananciales tal y como lo dispuso el Supremo en su sentencia del 17 de noviembre [de] 2008.**

Examinado el recurso, le concedimos término a los peticionarios para que presentaran su alegato. Recibida su comparecencia, el 15 de julio de 2011 le ordenamos a la parte recurrida a que sometiera su escrito en oposición al recurso, y le apercibimos que de no recibirse su alegato, el caso quedaría sometido sin su comparecencia.

Transcurridos más de ocho meses de notificada esta última Resolución, los recurridos no han presentado su escrito en oposición. Por consiguiente, procedemos a resolver la controversia que nos ocupa sin el beneficio de sus alegaciones.

II

A

La Regla 39.2(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 39.2(a), expone que:

> (a) Si el demandante dejare de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud del demandado, podrá decretar la desestimación del pleito o de cualquier reclamación contra él o la eliminación de las alegaciones, según corresponda.

Cuando se trate de un primer incumplimiento la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado de la parte de la situación y se le haya concedido oportunidad para responder. Si el abogado de la parte no respondiese a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

De la citada disposición surge que una vez se plantea ante el Tribunal de Instancia una situación que amerite la imposición de sanciones, este debe primeramente amonestar al abogado de la parte. Si la acción disciplinaria no produce frutos positivos, procederá la desestimación de la demanda o la eliminación de las alegaciones, luego de que la parte haya sido debidamente informada y apercibida de las consecuencias que puede acarrear el incumplimiento. *Mun. de Arecibo v. Almac. Yakima*, 154 D.P.R. 217, 222 (2001); *Dávila v. Hosp. San Miguel, Inc.* 117 D.P.R. 807, 814-815 (1986).

Sobre este particular, nos comenta el profesor Hernández Colón que

[e]l propósito de las sanciones puede ser disuasivo, punitivo o remediatorio. Es disuasivo en la medida en que la posibilidad de la aplicación de la sanción promueve el adecuado

desenvolvimiento del proceso al disuadir de la infracción de las reglas. Es punitivo cuando se persigue castigar al infractor y remediatorio cuando lo que busca la sanción es proveer un remedio a la infracción. En ocasiones la sanción es tanto punitiva como remediatoria.[5]

De ordinario, nuestro ordenamiento jurídico favorece el que los casos se ventilen en sus méritos. Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115 (1992). Es por ello que, a pesar que la Regla 39.2 de Procedimiento Civil, *supra*, provee para la eliminación de las alegaciones en casos de incumplimiento con las reglas u órdenes del tribunal, esta sanción debe prevalecer únicamente en situaciones extremas en las que sea clara e inequívoca la desatención y el abandono total de la parte con interés. Mun. de Arecibo v. Almac. Yakima, supra.

Como regla general, los tribunales están obligados a desalentar la práctica de falta de diligencia e incumplimiento con las órdenes del tribunal mediante su efectiva, pronta y oportuna intervención. Dávila v. Hosp. San Miguel, Inc., supra. Además, tienen el poder discrecional, según las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte. No obstante, esa determinación se debe ejercer juiciosa y apropiadamente. Maldonado v. Srio. de Rec. Naturales, 113 D.P.R. 494, 498 (1982).

---

[5] R. Hernández Colón, Práctica jurídica de Puerto Rico: Derecho procesal civil, 3ra ed., San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2007, pág. 181.

Establecido el alcance de las disposiciones aplicables, según las Reglas de Procedimiento Civil, concernientes a la imposición de sanciones por incumplimiento de órdenes del tribunal, pasemos a examinar el marco jurídico que alberga la figura de la sentencia sumaria.

B

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III R.36, preceptúa lo referente al mecanismo de la sentencia sumaria. El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. En vista del ánimo dinámico de estas, no ameritan la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una controversia de derecho. Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994 (2009).

Por su parte, la Regla 36.3, 32 L.P.R.A. Ap. III R. 36.3, dispone que para dictarse sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surja que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente. Ramos Pérez v. Univisión, 178 D.P.R. 200 (2010); González Aristud v. Hosp. Pavía, 168 D.P.R. 127

(2006); Luan Invest. Corp. v. Rexach Const. Co., 152 D.P.R. 652 (2000).

Solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986). Cuando no existe una clara certeza sobre todos los hechos materiales en la controversia, no procede una sentencia sumaria. Id.

En el pasado, hemos dispuesto que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Ramos Pérez v. Univisión, supra, citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000. T. I, pág. 609. La Regla 36.1 de Procedimiento Civil de 2009 se refiere a estos hechos como "esenciales y pertinentes…". 32 L.P.R.A. Ap. V.

"[C]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". Ramos Pérez v. Univisión, supra, pág. 214. Toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma. Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R.

538 (1991); Corp. Presiding. Bishop CJC of LDS v. Purcell, supra.

Al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).

La sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". Ramos Pérez v. Univisión, supra, pág. 220. Ahora bien, "el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". MGMT. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 611 (2000).

Analizados los preceptos reconocidos en relación a la moción de sentencia sumaria, pasemos a discutir la aplicación de la doctrina del mandato judicial.

C

El mandato ha sido definido como una "orden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia." I. Rivera

García, Diccionario de Términos Jurídicos, New Hampshire, Ed. Equity Publishing Corporation, 1976, pág. 158.

En síntesis, el mandato es el medio oficial que posee un tribunal apelativo para comunicar a un tribunal inferior la disposición de la sentencia objeto de revisión y para ordenarle el cumplimiento de lo acordado. Pueblo v. Tribunal de Distrito, 97 D.P.R. 241, 247 (1969). "El propósito principal del mandato es lograr que el tribunal inferior actúe en forma consistente con los pronunciamientos [del tribunal apelativo]." Id.

De la misma forma, una vez se remite el mandato por el Secretario del Tribunal, el caso que estaba ante la consideración de dicho foro finaliza para todos los efectos. Así pues, el tribunal inferior adquiere la facultad de continuar con los procedimientos, según lo que haya dictaminado el tribunal apelativo. Pérez, Ex parte v. Depto. de la Familia, 147 D.P.R. 556, 571 (1999). Una vez el mandato es remitido al tribunal inferior, este readquiere jurisdicción sobre el caso, a los únicos fines de ejecutar la sentencia, tal como fue emitida en apelación, y el tribunal apelativo pierde la suya. Pueblo v. Rivera, 75 D.P.R. 432, 433 (1953).

De ahí la acuñada frase generalmente incorporada en las sentencias de este Tribunal: "se devuelve el caso al tribunal de instancia para la continuación de ulteriores procedimientos no inconsistentes [con lo aquí resuelto]." Pueblo v. Tribunal de Distrito, supra.

Cónsono con lo antes esbozado, en el ámbito federal, el dictamen emitido por un tribunal de mayor jerarquía y enviado a uno de inferior jerarquía no da base a sugerencias o flexibilidad en cuanto a la orden a seguir, siendo esta una rígida y definitiva. En cuanto a este particular el tratadista James Moore nos comenta:

> Appellate courts often remand a case to the lower federal courts for further proceedings. It is often stated that the decision of an appellate court on an issue of law becomes the law of the case on remand. This is the almost universal language describing the law determined by the mandate. Although this terminology has been widely adopted, the Supreme Court has noted that the mandate rule is not, strictly speaking, a matter of law of the case. The nondiscretionary aspect of the law of the case doctrine is sometimes called the "mandate rule" and this terminology is more precise than the phrase "law of the case". **On remand, the doctrine of the law of the case is rigid; the district court owes obedience to the mandate of the Supreme Court or the court of appeals and must carry the mandate into effect according to its terms.**(Énfasis nuestro.)
>
> 18 J. W. Moore, Moore´s Federal Practice, 3era ed, Ed. Mathew Bender & Company, Inc., sec. 134.23(1)(a), pág. 134-58 (2011).

Como corolario de la doctrina, los tribunales apelativos federales han interpretado lo siguiente:

> Under the mandate rule, a lower court generally may not consider questions that the mandate has laid to rest…The mandate rule does not simply preclude a district court from doing what an appellate court has expressly forbidden it from doing. Under the mandate rule, a district court cannot reconsider issues the parties failed to raise on appeal; the court must attempt to implement the spirit of the mandate; and the court may not alter rulings impliedly made by the appellate court. (citas internas omitidas.) South Atlantic Ltd. Partnership of Tennessee, LP v. Riese, 356 F.3d 576, 583-584 (4to Cir. 2004).

Por otro lado, una vez remitido un mandato al tribunal inferior, el efecto de dicho auto alcanza aun aquellas cuestiones que, si bien no se litigaron, pudieron haberlo sido y no lo fueron. Pan American v. Tribunal Superior, 97 D.P.R. 447, 451 (1969). Sin embargo, la doctrina establece que si bien es cierto que los tribunales de menor jerarquía le deben obediencia y fiel cumplimiento al mandato judicial de un tribunal de mayor rango, estos mantienen discreción para reconsiderar asuntos que no fueron expresamente o implícitamente decididos por el tribunal que emitió la orden de mandato. J. W. Moore, op. cit., sec. 134.23 (4), pág. 134-61.

Lo anterior no debe interpretarse como un cheque en blanco para que los tribunales inferiores actúen fuera de la orden dictada. Por ello, se debe entender que son solo aquellos asuntos que son ajenos al mandato judicial los que este foro inferior podrá revisar. A saber, aquellos asuntos que no surgen de manera explícita o implícita. En cuanto a las explícitas, se entenderá que son aquellas que surgen de la sentencia claramente y sin espacio a ambivalencias. Sin embargo, las implícitas son las que establece el caso de Pan American v. Tribunal Superior, supra, es decir, aquellas cuestiones que si bien no se litigaron pudieron haberlo sido y no lo fueron; o aquellas que bien se desprenden del mandato mismo, así como aquellas que se deben realizar para que resulte efecto el mandato.

Establecido el marco doctrinal a la luz de estos principios, pasemos a considerar los señalamientos de error contenidos en el recurso ante nos.

### III

En el caso que nos ocupa, este Tribunal se pronunció en cuanto al derecho aplicable a la determinación del foro primario de resolver el caso mediante sentencia sumaria. En específico, sostuvimos que ese no era el vehículo procesal adecuado para disponer del recurso, ya que ese foro no tenía ante sí el valor real de los bienes sujetos a liquidación.

En aras de ilustrar con claridad lo resuelto en la sentencia emitida por esta Curia el 17 de noviembre de 2008, procedemos a citar la misma *in extenso*:

> En el presente caso, el Tribunal de Primera instancia tomó la acertada determinación de eliminar las alegaciones del peticionario, como medida disciplinaria, ante su craso incumplimiento con las órdenes emitidas. El patrón de craso incumplimiento constituye causa suficiente para imponer la drástica sanción de eliminar las alegaciones del peticionario. Por tanto se sostiene la determinación del foro primario a esos efectos.

> Del trámite procesal antes relatado surge que luego de concedida la renuncia de su representante legal, el peticionario demoró más de un año en anunciar la nueva representación legal. En octubre de 2005, el Tribunal le concedió (15) días para que gestionara e informara quién asumiría su representación. Pasado en exceso dicho término se le impuso una sanción económica de $300 y se le apercibió de la posibilidad de que se eliminaran sus alegaciones si incumplía con lo ordenado. Llegado el 14 de febrero de 2007 sin que el peticionario cumpliera la orden, el tribunal procedió a eliminar las alegaciones del peticionario.

**Sin embargo, la eliminación de las alegaciones no conlleva, de por sí, la inexistencia de controversias de hechos que justifica el que no se celebre una vista evidenciaria. Hemos dispuesto reiteradamente que el proceso de formar consciencia judicial exige que se compruebe cualquier aseveración mediante prueba y, para ello, el tribunal deberá celebrar las vistas que crea necesarias y adecuadas.** Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809 (1978).

El expediente revela que cuando el Tribunal de Primera Instancia dictó sentencia sumaria no tenía ante sí toda la prueba necesaria para establecer de manera concluyente los derechos de cada una de las partes sobre los bienes gananciales y poder adjudicar finalmente la totalidad de las controversias suscitadas en el caso. A pesar que durante la vista con antelación al juicio las partes mencionaron la existencia de una estructura construida con dinero ganancial en terreno del padre de la señora Mejías, cuya tasación fue judicialmente ordenada, nada se dispuso en la solicitud ni en la sentencia sumaria sobre el crédito que le pertenece a la sociedad legal de gananciales por la construcción de dicha estructura.

Asimismo, el foro primario dividió y liquidó, en ausencia de prueba, las participaciones que la sociedad legal de gananciales poseía sobre la corporación Roberto Camping, Inc. Del expediente surge que existe una controversia en cuanto a si el peticionario, a través de la sociedad legal de gananciales, se obligó a adquirir las participaciones de su suegro en esa corporación. Por esa razón, al momento de dictarse la sentencia sumaria se desconocía el por ciento de participación y el valor de las acciones que poseía la sociedad de gananciales sobre la referida corporación.

Igualmente, la sentencia sumaria fue decretada en desconocimiento de la cuantía que aportó la sociedad legal de gananciales, al plan de retiro del peticionario. En cuanto a dicho asunto, el tribunal ordenó que el sistema de retiro proveyera la información sobre las aportaciones que éste había acumulado. Sin embargo, al momento de dictarse la sentencia sumaria aún no se había provisto la información.

Finalmente, el foro primario dividió un plan vacacional, el mobiliario de la casa y un bote sin tener inventario ni avalúo de los mismos. La señora Mejías, aunque hizo mención de ellos, no acompañó prueba en la solicitud de sentencia sumaria que sustentara la existencia y el valor de los referidos bienes. Es decir, el Tribunal asumió como un hecho su existencia y dejó al arbitrio de las partes estimar su justo valor.

**En vista de lo anteriormente expuesto, concluimos que el Tribunal de Primera Instancia dictó sentencia sumaria sin contar con la evidencia necesaria para adjudicar la totalidad del caso. Por consiguiente, y al amparo de la Regla 50 del Reglamento del Tribunal Supremo de Puerto Rico, expedimos el auto y revocamos la sentencia recurrida, así como la sentencia del Tribunal de Primera Instancia. Se devuelve el caso a dicho foro para que reciba prueba en una vista evidenciaria sobre la existencia y valor de cada uno de los bienes gananciales cuya división se solicita.**

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal, interina.

(Énfasis nuestro.)
Sentencia de 17 de noviembre de 2008, <u>Diego Mejías Montalvo v. Rafael Carrasquillo Martínez</u>, CC-2008-463, págs. 8-11.

Al evaluar la determinación de este Tribunal a la luz de la doctrina del mandato, es forzoso concluir que el Tribunal de Primera Instancia no poseía la autoridad para decidir que la sentencia emitida por este Foro no revocaba completamente la sentencia dictada sumariamente por el foro primario. El foro de instancia venía obligado a seguir el pronunciamiento de este Tribunal y proseguir con los procedimientos como si la referida sentencia emitida sumariamente no hubiese existido.

En vista de lo anterior, le corresponde al foro primario celebrar una vista evidenciaria en la cual se

desfile prueba de todos los bienes sujetos a liquidación, incluyendo aquellos que no fueron incluidos en la sentencia sumaria que emitiera ese tribunal el 22 de octubre de 2007.

En el caso ante nuestra consideración no procedía que se dictara sentencia sumaria a base de las alegaciones esbozadas en la demanda original, por lo que erró el foro de instancia en su apreciación de que esta fue solo revocada parcialmente. De un examen de las alegaciones de la demanda, resulta claro que estas son insuficientes para poner en condiciones al juzgador de dictar sentencia a partir de las mismas.

Como es fácil de estimar, a base de dichas alegaciones no es posible conocer de qué bienes específicos se trata; si los mismos efectivamente pertenecen al patrimonio ganancial cuya división se solicita, ni tampoco el valor real de los mismos, entre otros factores. Tales datos, indudablemente, son imprescindibles para colocar al juzgador en posición de adjudicar y liquidar la sociedad legal de gananciales correctamente.

Como señalamos anteriormente, el hecho de que las alegaciones del peticionario hayan sido eliminadas no es óbice para que este, por medio de una vista evidenciaria, pueda probar la veracidad de sus aseveraciones en aras de resolver las controversias de **hechos** que aún persisten en el caso de autos. Resolver lo contrario prolongaría este

ya tan sonado Bolero de Rabel, que tiene como melodía la de nunca acabar.

## IV

Ahora bien, en cuanto al resto de los errores planteados en el recurso de *certiorari* antes descrito en relación a las determinaciones del juzgador de instancia en el ejercicio de su discreción para el manejo del caso, resolvemos que al Tribunal de Apelaciones le asiste la razón al no atender dichos señalamientos. Compartimos el criterio de que se trata de determinaciones del foro primario que merecen nuestra deferencia.

La deferencia al juicio y discreción del foro sentenciador está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es harto sabido, dicho foro es el mejor que conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar para llegar eventualmente a una disposición final.

Al analizar la información ante su consideración, el foro primario entendió que no procedía la descualificación del tasador por meras alegaciones del peticionario. Más aún, cuando estas ya fueron planteadas anteriormente mediante recurso de *certiorari* ante otro Panel del Tribunal de Apelaciones, el cual fue desestimado.

V

Por los fundamentos enunciados, se revoca parcialmente la Resolución dictada por el Tribunal de Apelaciones el 8 de junio de 2010, mediante la cual no expidió el auto para atender la determinación del foro primario. En consecuencia, se ordena la devolución del caso de autos al Tribunal de Primera Instancia para que reciba prueba en una vista evidenciaria conforme a lo aquí establecido.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Diego E. Mejías Montalvo,
*et al*                                    Certiorari
     Recurridos

          v.                        CC-2010-0800

    Rafael Carrasquillo
     Martínez, *et al*
      Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 3 de abril de 2012.

Por los fundamentos enunciados, se revoca parcialmente la Resolución dictada por el Tribunal de Apelaciones el 8 de junio de 2010, mediante la cual no expidió el auto para atender la determinación del foro primario. En consecuencia, se ordena la devolución del caso de autos al Tribunal de Primera Instancia para que reciba prueba en una vista evidenciaria conforme a lo aquí establecido.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren sin opinión escrita.

Larissa Ortiz Modestti
Secretaria del Tribunal Supremo, Interina