El Juez Asociado Señor Feliberti Cintrón
emitió la opinión del Tribunal.
El trayecto extenso recorrido por los dos recursos de cer-tiorari de epígrafe nos ofrece la oportunidad de reafirmar la importancia de que los tribunales de instancia aguarden recibir el mandato de un tribunal apelativo luego de revi-sar un caso en apelación o expedir un auto discrecional, antes de adquirir jurisdicción sobre el mismo nuevamente y continuar con los procedimientos del caso. Vaillant v. Santander, 147 D.P.R. 338, 351 (1998).
Mediante Resolución de 21 de octubre de 2011, le conce-dimos término a las partes para mostrar causa por la cual no debíamos expedir los recursos solicitados y revocar los dictámenes en cuestión del Tribunal de Apelaciones. Luego de examinar detenidamente el trámite procesal concer-niente a los recursos ante nuestra consideración, y con-tando con la posición de las partes concernidas, nos encon-tramos en posición de resolver.
I
Los procedimientos en instancia comenzaron el 21 de jimio de 1994 con la presentación de una demanda en da-ños y perjuicios que hicieron los peticionarios, Luis Colón Alicea (señor Colón), su esposa, María N. González López y la Sociedad de Bienes Gananciales compuesta por ambos (en conjunto, los peticionarios) en contra de Frito Lays de Puerto Rico (Frito Lays) y uno de sus empleados de nombre Orlando Irizarry Rosado (en conjunto, los recurridos). También comparecieron como demandantes en dicha ac-ción judicial los dos hijos de los peticionarios.
Según surge de la demanda, los peticionarios alegaron haber sufrido daños como consecuencia de un accidente automovilístico cuando un conductor de Frito Lays, en fun-ciones de su trabajo, impactó el automóvil en que viajaban los primeros. Dicho evento sucedió el 30 de junio de 1993. *140 La Corporación del Fondo del Seguro del Estado (FSE) in-tervino en los procedimientos ante el foro primario con el propósito de recuperar los gastos en los que incurrió en el tratamiento del señor Colón como consecuencia de los da-ños causados por el accidente.
Una vez finalizado el juicio en su fondo, el Tribunal de Primera Instancia concluyó, mediante Sentencia de 3 de agosto de 2010 y notificada a las partes el 18 de ese mismo mes y año, que los daños reclamados por el señor Colón en su demanda se debían, en su mayoría, a lesiones previa-mente sufridas en su lugar de trabajo y para las cuales había estado recibiendo tratamiento en el FSE. En su dic-tamen, el foro primario declaró “no ha lugar” las causas de acción del resto de los peticionarios, así como la solicitud de lucro cesante del señor Colón y lo que reclamó el FSE. No obstante, ordenó a los recurridos pagar al señor Colón $60,000 por el agravamiento de su condición prexistente, y como compensación por los daños y angustias mentales su-fridos como consecuencia del accidente.
Transcurridos varios trámites ante el foro primario, el 22 de octubre de 2010, el señor Colón y Frito Lays recurrie-ron, por separado, al Tribunal de Apelaciones. Los recursos instados por éstos recibieron los Núms. KLAN201001534 y KLAN201001541, respectivamente. Mediante dos Senten-cias emitidas el 29 de octubre de 2010, el foro apelativo intermedio concluyó que ambas apelaciones eran prematu-ras, puesto que el Tribunal de Primera Instancia no le no-tificó al FSE la Sentencia. Dictaminó que, como consecuen-cia de lo anterior, el término para apelar no había comenzado a transcurrir, por lo que procedía una nueva notificación a todas las partes. El 9 de noviembre de 2010 se notificó la Sentencia emitida en el Recurso KLAN201001541 y un día después, es decir, el 10 de no-viembre de 2010, se notificó la correspondiente al Recurso KLAN201001534.
*141 Conforme a las Sentencias dictadas por el foro apelativo intermedio, el 23 de diciembre de 2010, el Tribunal de Pri-mera Instancia emitió una Notificación Enmendada de la Sentencia a todas las partes. No obstante, no fue hasta el 13 de enero de 2011 que la Secretaría del foro apelativo intermedio remitió el mandato al Tribunal de Primera Ins-tancia en el Recurso KLAN201001541, y hasta el 24 de enero de 2011 que hizo lo propio en el Recurso KLAN201001534.(1) Lo anterior quedó evidenciado por el hecho de que no fue hasta el 8 de febrero de 2011 que el Tribunal de Primera Instancia emitió una Notificación dándose por enterado de la Sentencia dictada por el Tribunal de Apelaciones.
El 4 de enero de 2011, el FSE presentó una Moción de Reconsideración para cuestionar que no se hubiese orde-nado, como parte de la Sentencia, el rembolso de los gastos en los que incurrió dicha entidad para el tratamiento de los daños agravados ocasionados al señor Colón en el acci-dente en cuestión. El Tribunal de Primera Instancia acogió la Moción de Reconsideración del FSE mediante Orden de 12 de enero de 2011, y notificada a las partes el 21 de enero de 2011. Ordenó a los peticionarios que se expresaran con relación a la misma dentro del término de quince días. Así las cosas, el 18 de enero de 2011, los recurridos la refuta-ron mediante su Oposición a la Moción de Reconsideración. Pasados dos días, el 20 de enero de 2011 éstos presentaron, además, una Moción al Amparo de la Regla 47 de Procedi-miento Civil para oponerse a la Moción de Reconsideración del FSE por habérsele notificado tardíamente.(2)
Por entender que la solicitud de reconsideración del FSE no tuvo efecto interruptor, el 21 de enero de 2011 los *142 recurridos presentaron un recurso de apelación ante el Tribunal de Apelaciones, al cual se le asignó el Núm. KLAN201100090. De este modo, dio inicio el primero de dos procedimientos judiciales ante el foro apelativo inter-medio, que transcurrieron paralelos hasta tanto el Tribunal de Primera Instancia dispuso de la Moción de Reconsi-deración del FSE.
Mientras tanto, los procedimientos ante instancia conti-nuaron su curso. Así, pues, el 26 de enero de 2011, los peticionarios se allanaron a la Moción de Reconsideración del FSE. Debido a que la Hon. Yazmín Nadal Arroyo, quien presidió el juicio, se encontraba ausente, el Hon. Raphael G. Rojas Fernández, mediante Orden de 8 de febrero de 2011, y notificada el próximo día 22, le refirió a la juez Nadal Arroyo las dos objeciones sometidas por los recurri-dos atinentes a la solicitud de reconsideración del FSE para que las atendiera a su regreso.
De otra parte, el 25 de febrero de 2011, los peticionarios solicitaron la desestimación del recurso de apelación KLAN201100090 presentado por los recurridos ante el Tribunal de Apelaciones. Adujeron como fundamento para ello que dicho recurso era prematuro, ya que para el momento de su presentación, el foro primario aún conservaba juris-dicción sobre el caso según la Moción de Reconsideración presentada por el FSE.
El 2 de marzo de 2011, ya de regreso a sus funciones, la juez Nadal Arroyo declaró “ha lugar” ambas mociones de los recurridos en las que éstos objetaron la solicitud de reconsideración del FSE. Su decisión le fue notificada a las partes el 4 de marzo de 2011. Una vez resuelto el asunto de la reconsideración del FSE a nivel de instancia, el 31 de marzo de 2011, los peticionarios presentaron el recurso de apelación KLAN201100409 ante el Tribunal de Apelacio-nes para solicitar la revocación de la Sentencia emitida por *143 el foro de instancia.(3) Los recurridos solicitaron la desesti-mación del mencionado recurso de apelación alegando, en apoyo a su moción, que el escrito de reconsideración some-tido por el FSE ante el Tribunal de Primera Instancia no interrumpió el término para apelar porque su notificación fue tardía. Argumentaron, por lo tanto, que el recurso de apelación se presentó fuera del término dispuesto para *144 ello, por lo que el Tribunal de Apelaciones carecía de juris-dicción para atenderlo.
El foro apelativo intermedio evaluó las posturas de am-bas partes y resolvió que, en efecto, debido a la falta de notificación oportuna de la Moción de Reconsideración in-terpuesta por el FSE, ésta no tuvo el efecto interruptor pretendido por los peticionarios. Así, pues, mediante Reso-lución de 15 de abril de 2011 y notificada el 29 de ese mes, el Tribunal de Apelaciones denegó la solicitud de desesti-mación presentada por los peticionarios en el Recurso KLAN201100090.
De otra parte, y cónsono con su dictamen anterior, me-diante Sentencia de 27 de mayo de 2011, el Tribunal de Apelaciones desestimó, por falta de jurisdicción, el recurso de apelación KLAN201100409 que sometieron los peticio-narios por haberse presentado fuera de término. Inconfor-mes con tales determinaciones, el 29 de junio de 2011, los peticionarios presentaron ante este Foro dos recursos de certiorari en los que, en esencia, argumentaron que la pre-sentación de su recurso de apelación ante el Tribunal de Apelaciones había sido oportuna, mientras que el recurso de apelación presentado por los recurridos había sido prematuro.
El primer recurso de certiorari, CC-2011-532, corres-ponde a la Sentencia desestimatoria del recurso de apela-ción KLAN201100409, en el cual éstos aducen el siguiente error:
Erró el Honorable Tribunal de ... Apelaciones al determinar que la moción de reconsideración presentada no interrumpió el término para apelar, a pesar de que la misma fue acogida por el foro de instancia antes de que la sentencia adviniere final y firme. Caso Núm. CC-2011-0532, Pieza 1, Petición de certiorari, pág. 9.
Aunque por una razón distinta, expedimos el auto de certiorari solicitado y confirmamos la Sentencia desestima-toria del Tribunal de Apelaciones, objeto de dicho recurso.
*145 Por otro lado, en el recurso de certiorari CC-2011-533 se cuestiona la Resolución emitida en el recurso de apelación KLAN201100090, mediante la cual el Tribunal de Apela-ciones rechazó el argumento de que el recurso de apelación sometido por los recurridos se había presentado prematu-ramente. Dicha controversia se nos plantea a través del siguiente señalamiento de error:
Erró el Honorable Tribunal de ... Apelaciones al no desestimar por prematuro el recurso de apelación al haber sido radicado mientras estaba pendiente ante el Tribunal de [Primera] Ins-tancia la resolución de la moción de reconsideración del interventor. Caso Núm. CC-2011-0533, Petición de certiorari, pág. 9.
Nuevamente, aunque por razón distinta, expedimos el auto de certiorari solicitado y revocamos la determinación del Tribunal de Apelaciones objeto de tal recurso. Veamos.
II
A. Efecto de la presentación de recursos ante los tribunales apelativos
El sistema judicial de Puerto Rico constituye un solo distrito judicial para fines jurisdiccionales. Con el propósito de hacer viable su buen funcionamiento se ha delimitado la autoridad de los tribunales para resolver los casos o controversias, asignándole competencias a cada uno de los distintos niveles que componen el Tribunal General de Justicia. De ese modo, los foros de primera instancia ejercen una competencia general y los otros dos estratos superiores, es decir, el Tribunal de Apelaciones y este Tribunal, ejercen una competencia apelativa. J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. I, pág. 268; Cosme v. Hogar Crea, 159 D.P.R. 1, 7 (2003).
*146 Según está estructurado dicho sistema judicial, si una de las partes de un caso no está conforme con las determinaciones, ya sea del Tribunal de Primera Instancia o del Tribunal de Apelaciones, tiene la oportunidad de que dicho dictamen lo revise el correspondiente foro de jerarquía superior. En cuanto a lo anterior, es preciso señalar que, como explicamos en detalle más adelante, el efecto de ese recurso en la autoridad del tribunal recurrido para continuar con los procedimientos dependerá de su naturaleza. Según el tipo de recurso interpuesto, puede sobrevenir, ya sea la suspensión automática de los procedimientos en el tribunal inferior o éstos continuarán hasta tanto el foro en alzada determine lo contrario.
Las Reglas de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V) regulan los asuntos atinentes a los procedimientos posteriores a la sentencia. Específicamente, en su Regla 52.3 se pormenorizan las implicaciones que tiene, en los procedimientos ante el tribunal recurrido, el presentarse o expedirse un recurso por un tribunal de superior jerarquía. Dicha regla provee lo siguiente:
(a) Una vez presentado el escrito de apelación, se suspende-rán todos los procedimientos en los tribunales inferiores res-pecto a la sentencia o parte de ésta de la cual se apela, o las cuestiones comprendidas en ella, salvo orden en contrario, ex-pedida por iniciativa propia o a solicitud de parte por el tribunal de apelación; pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión involucrada en el mismo no comprendida en la apelación. Disponiéndose, que no se suspenderán los procedimientos en el Tribunal de Primera Instancia cuando la sentencia disponga la venta de bienes susceptibles de pérdida o deterioro, en cuyo caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes sean vendidos y su importe depositado hasta tanto el tribunal de apelación dicte sentencia.
(b) La presentación de una solicitud de certiorari no suspen-derá los procedimientos ante el tribunal recurrido, salvo orden en contrario, expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación. La expedición del auto de certiorari suspenderá los procedimientos en el tribunal recu-rrido, salvo que el Tribunal de Apelaciones disponga lo *147 contrario.
(c) La presentación de una solicitud de certificación no inte-rrumpirá los procedimientos ante el Tribunal de Apelaciones o el Tribunal de Primera Instancia, salvo que el Tribunal Supremo disponga lo contrario, por iniciativa propia o a petición de parte. En cuanto a las órdenes de entredicho provisional e injunction, se estará a lo dispuesto en la Regla 57.7 de este apéndice.
(d) No se suspenderán los efectos de una decisión apelada o recurrida, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación, que incluya cualquiera de los remedios siguientes:
(1) Una orden de injunction, de mandamus o de hacer o desistir.
(2) Una orden de pago de alimentos.
(3) Una orden sobre custodia o relaciones filiales. 32 L.P.R.A. Ap. V.(4)
Por otro lado hay que observar lo preceptuado tanto en el Reglamento del Tribunal de Apelaciones como en el de este Foro. Sobre el particular, la normativa pertinente al foro apelativo intermedio contiene varias disposiciones, de-pendiendo, a su vez, de si se trata de una apelación, de un certiorari odeun proceso civil o criminal.
En específico, la Regla 18 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, prescribe los efectos de la presentación de una apelación en un caso civil:
(A) Suspensión. — Una vez presentado el escrito de apela-ción, se suspenderán todos los procedimientos en el Tribunal de Primera Instancia respecto a la sentencia, o parte de la misma, de la cual se apela, o a las cuestiones comprendidas en ella, salvo orden en contrario, expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones; pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión no comprendida en la apelación.
(B) Cuándo no se suspenderá. — No se suspenderán los pro-cedimientos en el Tribunal de Primera Instancia cuando la sentencia dispusiere la venta de bienes susceptibles de pér- *148 dida o deterioro. En ese caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes sean vendidos y su importe depositado hasta tanto el tribunal de apelación dicte sentencia.
No se suspenderán los efectos de una decisión apelada, salvo una orden en contrario expedida por el Tribunal de Apelacio-nes, por iniciativa propia o a solicitud de parte, cuando ésta incluya cualesquiera de los remedios siguientes:
(1) Una orden de injunction, de mandamus o de hacer o desistir.
(2) Una orden de pago de alimentos.
(3) Una orden sobre custodia o relaciones filiales.(5)
Cuando se trata de recursos de certiorari, es la Regla 35 del Reglamento del Tribunal de Apelaciones la que fija los efectos de su presentación, dependiendo de si se trata de un caso civil o de uno criminal.(6) Dicha regla dis-pone de la siguiente manera:
(A) En casos civiles.—
(1) La presentación de una solicitud de certiorari no suspen-derá los procedimientos ante el Tribunal de Primera Instan-cia, salvo orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedi-ción del auto de certiorari suspenderá los procedimientos en el Tribunal de Primera Instancia, salvo que el Tribunal de Ape-laciones disponga lo contrario.
(2) Si la resolución recurrida dispusiera la venta de cosas susceptibles de pérdida o deterioro, el Tribunal de Primera Instancia podrá ordenar que se vendan las mismas y que se deposite su importe hasta que el Tribunal de Apelaciones re-suelva el recurso.
(3) No se suspenderán los efectos de una decisión recurrida, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones, que incluya cualquiera de los remedios siguientes:
(a) Una orden de injunction, de mandamus o de hacer o desistir.
*149 (b) una orden de pago de alimentos.
(c) una orden sobre custodia o relaciones filiales.
(B) En casos criminales. — La presentación de una solicitud de certiorari para que revise una sentencia condenatoria sus-penderá la ejecución de la sentencia, una vez prestada fianza, excepto cuando la sentencia recurrida disponga que la parte convicta quede en libertad a prueba, no se admita la presta-ción de fianza o una ley especial disponga que no se suspen-derá la misma. Mientras se sustancia el recurso de certiorari, el tribunal sentenciador conservará su facultad para modificar las condiciones de la libertad a prueba o para revocarla. 4 L.P.R.A. Ap. XXII-B.
Los efectos de la presentación o expedición de un recurso de apelación o de certiorari ante este Foro se encuentran igualmente establecidos en nuestro Reglamento. In re Reglamento Tribunal Supremo, 183 D.RR. 386 (2011). Específicamente, el inciso (c) de la Regla 17 de nuestro Reglamento atiende los aspectos relativos a la presentación de una apelación y dispone, en su parte pertinente, lo siguiente:
(c) Efectos de la presentación del escrito de apelación
La presentación del escrito de apelación ante el Tribunal suspenderá los procedimientos en los tribunales inferiores, salvo una orden en contrario expedida por este Tribunal a ini-ciativa propia o a solicitud de parte. Los tribunales inferiores podrán continuar la consideración de cualquier otro asunto no comprendido en la apelación. In re Reglamento Tribunal Supremo, supra, pág. 434.
Lo atinente a los efectos de la presentación o expedición de las peticiones de certiorari se encuentra, por su parte, preceptuado en los incisos (j) y (k) de la Regla 20 de nuestro Reglamento. Los mismos disponen, respectivamente, lo siguiente:
(j) Efecto de la presentación de la solicitud de certiorari'.
(l) En casos civiles
La presentación de una solicitud de certiorari no suspen-derá los procedimientos ante el Tribunal de Apelaciones o el Tribunal de Primera Instancia, salvo una orden en contrario *150 expedida por el Tribunal Supremo, a iniciativa propia o a so-licitud de parte.
Si la sentencia recurrida dispone la venta de bienes sus-ceptibles de pérdida o deterioro, el Tribunal Supremo, a inicia-tiva propia o a solicitud de parte, podrá ordenar la suspensión de los efectos de la sentencia o resolución.
(2) En casos criminales
La presentación de una solicitud de certiorari de una sen-tencia condenatoria suspenderá la ejecución de la sentencia una vez prestada fianza, excepto cuando la sentencia recu-rrida disponga que la parte convicta quede en libertad a prueba, no se admita la prestación de la fianza o una ley especial disponga que no se suspenda la misma. Mientras se perfecciona el recurso de certiorari, el tribunal sentenciador conservará su facultad para modificar las condiciones de la libertad a prueba o para revocarla.
(k) Expedición del auto de “certiorari”
El auto de certiorari se expedirá solamente por orden del Tribunal, a su discreción. La expedición del auto, tanto en ca-sos civiles como criminales, suspenderá los procedimientos en el Tribunal de Apelaciones y el Tribunal de Primera Instancia, salvo que el Tribunal disponga lo contrario. (Escolio omitido). In re Reglamento Tribunal Supremo, supra, págs. 447-448.
En resumen, lo que suceda en los procedimientos, y como consecuencia en la jurisdicción del tribunal recurrido, una vez se acude en alzada, variará según el tipo de re-curso instado. Es decir, dependerá de si se trata de un re-curso de apelación o de certiorari y de la naturaleza civil o criminal de la acción. Debido a las importantes implicacio-nes de índole jurisdiccional que ello conlleva, los tribunales concernidos deben estar atentos al desarrollo del caso a nivel del tribunal revisor y a la etapa procesal en la que éste se encuentra, previo a retomar acción en el mismo.
Una vez el tribunal de superior jerarquía adquiere ju-risdicción sobre el asunto presentado para su revisión y emite una determinación que adviene final y firme, tienen que coincidir ciertas condiciones procesales para que el tribunal recurrido vuelva a adquirir jurisdicción sobre el caso. Nos referimos específicamente a la remisión del mandato. Veamos.
*151 B. Mandato
El mandato es una figura enmarcada dentro de los procesos apelativos judiciales. Reiteradamente la he-mos definido como el medio que posee un tribunal en alzada de comunicarle a un tribunal inferior qué determinación ha tomado sobre la sentencia objeto de revisión y ordenarle actuar en conformidad con la misma. Mejias et al. v. Carrasquilla et al., 185 D.RR. 288 (2012). En nuestro ordenamiento jurídico procesal han existido un sinnúmero de disposiciones que han gobernado los asuntos atinentes al mandato judicial. Este concepto se encontraba recogido anteriormente en la Regla 54.7 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).(7) Sin embargo, en nuestro nuevo esquema procesal civil, esto es, en las Reglas de Procedimiento Civil de 2009(8) no se incorporó una norma equivalente.(9)
No obstante, en conformidad con la facultad que se nos reconoce en la Regla 52.1 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V), para reglamentar el trámite de los recursos en los tribunales de apelación, la figura del *152 mandato sí se encuentra delineada en el Reglamento del Tribunal de Apelaciones y en el Reglamento de este Tribunal. Cónsono con esto, la Regla 84(E) del Reglamento del Tribunal de Apelaciones establece lo siguiente:
(E) Transcurridos diez (10) días laborables de haber adve-nido final y firme la decisión del Tribunal de Apelaciones, el Secretario (a) enviará el mandato al Tribunal de Primera Ins-tancia o a la agencia correspondiente, junto con todo el expe-diente original, cuando éste haya sido elevado. 4 L.P.R.A. Ap. XXII-B.
Nuestro Reglamento, por su parte, en la Regla 45 dis-pone sobre el particular lo siguiente:
(a) Diez días laborables después de la fecha en que se envió a las partes copia de la decisión del Tribunal en un caso, el Secretario o la Secretaria enviará el mandato al tribunal revi-sado, a no ser que se haya presentado una moción de reconsi-deración dentro de dicho periodo o que el Tribunal haya orde-nado la retención del mandato.
(b) Toda moción de reconsideración deberá presentarse den-tro del plazo jurisdiccional de diez días laborables mencionado en el inciso (a) de esta regla y no deberá exceder de diez pági-nas. ... Si el Tribunal deniega la moción de reconsideración, el mandato se enviará cuatro días laborables después de la fecha cuando se envió a las partes la copia de la resolución, a menos que se haya presentado una segunda moción de reconsidera-ción conforme a lo dispuesto en el inciso (c) de esta regla.
(c)... Si la segunda moción de reconsideración se deniega, el mandato se enviará al tribunal revisado el día siguiente.
(e) En cualquier caso en que una sentencia o resolución de este Tribunal pueda ser revisada por el Tribunal Supremo de Estados Unidos de América mediante un recurso de certiorari, podrá retenerse, a solicitud de parte, la remisión del mandato al tribunal revisado por un término razonable. Si dentro de dicho término se archiva en la Secretaría una certificación del Secretario o Secretaria del Tribunal Supremo de Estados Uni-dos de América, que acredite que la petición de certiorari, el expediente y el alegato han sido presentados ante dicho Tribunal, se retendrá el mandato hasta que recaiga una disposición final del recurso de certiorari. A la presentación de una copia *153 de la orden del Tribunal Supremo de Estados Unidos de Amé-rica en la que se deniega la expedición del auto, se remitirá inmediatamente el mandato al tribunal revisado. En la mo-ción sobre retención del mandato, la parte promovente deberá señalar las cuestiones que se plantearán en el recurso de cer-tiorari, con referencia a los hechos y las circunstancias perti-nentes del caso.
El concepto mandato cobra especial relevancia en lo concerniente a los efectos de índole jurisdiccional que pueda tener su remisión al foro de origen. Según establecido en las disposiciones legales pertinentes, una vez el tribunal en alzada emite su determinación, y la misma adviene final y firme, se enviará el mandato correspondiente al foro recurrido. Es en ese momento que el recurso que estaba ante la consideración del foro revisor concluye para todos los fines legales, por lo que se entiende que no es hasta entonces que éste pierde jurisdicción en lo concerniente al asunto.
Once the mandate is issued, the ... court’s appellate jurisdiction formally ends. The ... court does have inherent power within a reasonable time to recall the mandate and cancel its effectiveness, and to restore its appellate jurisdiction, but only in very exceptional circumstances.
Following the issuance of the appellate mandate, the [lower] court is required to take any action that is consistent with the mandate, as stated in the judgment entered in the [appellate] court, and any written opinion of [such] court. Conversely, the [lower] court may not reconsider issues the parties failed to raise on appeal. It must attempt to implement the spirit of the mandate, and the court may not alter rulings impliedly made by the appellate court. (Énfasis nuestro y escolios omitidos). 3 Moore’s Manual, Federal Practice and Procedure Secs. 28.94[2]-28.94[3] [a] (2010).
Con relación a este particular, en Pueblo v. Pérez, 159 D.P.R. 554 (2003), reconocimos que el Tribunal de Apelaciones no puede conservar jurisdicción sobre un caso una vez ha resuelto todas las controversias ante su consideración y ha remitido el mandato al foro recurrido con *154 instrucciones específicas de cómo actuar. Conforme a lo anterior, el tribunal sujeto a revisión no adquiere jurisdicción nuevamente para poder continuar con los procedimientos y ejecutar los dictámenes de la sentencia en alzada hasta tanto reciba el mandato del tribunal revisor. En otras pa-labras, es por el mandato que se le devuelve la autoridad para actuar, según lo dispuesto por el tribunal de mayor jerarquía.
En resumen, luego de paralizados los procedimientos en el foro de origen, éste pierde su facultad para atender las controversias planteadas en alzada y no vuelve a adquirir jurisdicción sobre ellas hasta tanto el tribunal revisor le remite el mandato correspondiente. Pérez, Ex parte v. Depto. de la Familia, 147 D.P.R. 556, 570 (1999).
Lo anterior tiene el efecto ineludible de anular toda ac-tuación que lleve a cabo el foro revisado, luego de que los asuntos se hayan paralizado y previo a recibir el mandato. Pérez, Ex parte v. Depto. de la Familia, supra. Véase, ade-más, Vaillant v. Santander, supra.
Some time after the court of appeals has entered its judgment in a case on appeal, the court issues its mandate. The mandate is directed to the court below, which upon receipt of the mandate can take whatever further proceedings are appropriate or necessary in light of the mandate. Until the mandate issues, however, the case ordinarily remains within the jurisdiction of the court of appeals and the [lower] court lacks power to proceed further with respect to the matters involved with the appeal. (Énfasis nuestro y escolio omitido). 16AA Wright and Miller, Federal Practice and Procedure: Jurisdiction and Related Matters 4th Sec. 3987 (2008).
Parte de los inconvenientes procesales y sustantivos que provoca esta separación de eventos entre la disposición en alzada y el mandamiento se recogen, por ejemplo, en la siguiente expresión donde se ilustra el estado de derecho que se suscita durante el periodo que discurre entre ambas contingencias y el cual se designa como “limbo jurídico”:
Due to the needless separation of the issuance of a decision *155 from the issuance of the corresponding mandate, federal courts have created a type of limbo in which decisions may exist for a period of time before being given full effect and precedential value through mandate. M.J. Stephan, J. Reidy y G. Krishnamurthi, Closing the Gap: Post-Decision, Pre-Man-date Mootness, 7 Seton Hall Circuit Rev. 287, 288 (Spring 2011).
De este modo, podemos decir que el mandato guarda una función dual que impacta la jurisdicción del tribunal de menor jerarquía. Primeramente, le reviste nuevamente con autoridad sobre el caso, a la vez que le per-mite disponer de éste conforme las directrices impartidas por la resolución o sentencia concernida.
In its most indispensable form, the mandate allocates judicial authority in two different ways. First, it vests the lower court on remand with jurisdiction. Second, it gives the lower court on remand the authority to render judgment consonant with the appellate court’s judgment. (Escolio omitido). J.L. Phillips III en Comentario, “It Ain’t over ‘Til it’s Over,”But Will it Ever Be?: The Elusive Procedural Finality of Bell v. Thompson and an Appellate Court’s Mandate, 60 Ark. L. Rev. 319, 342-343 (2007).
Ill
Conforme la evidencia no controvertida que consta en los autos del caso ante nos, el 29 de octubre de 2010, el foro apelativo intermedio desestimó, por prematuros, los dos (2) recursos que instaron Frito Lays y el señor Colón el 22 de octubre de 2010. La desestimación obedeció a que la noti-ficación de la Sentencia, de la cual las partes recurrían, resultó defectuosa porque no se le envió al FSE, parte in-terventora en el pleito.
Así las cosas, el 23 de diciembre de 2010, el Tribunal de Primera Instancia le envió la correspondiente notificación enmendada a todas las partes en el pleito.
No obstante, al así hacerlo, el foro primario no se per-cató de que para esa fecha el Tribunal de Apelaciones no le *156 había remitido aún los mandatos correspondientes a las dos (2) apelaciones que instaron Frito Lays y el señor Colón. Por lo tanto, para todos los efectos legales, en ese momento el foro primario carecía de toda autoridad para actuar, incluso para emitir dicha notificación. Según rela-táramos anteriormente, no fue sino hasta el 13 de enero de 2011 que el Tribunal de Apelaciones remitió el mandato en el Recurso KLAN201001541, y hasta el 24 de enero de 2011 en que hizo lo propio en el Recurso KLAN201001534. Sin duda alguna, para el 23 de diciembre de 2010, el foro ape-lativo intermedio retenía la jurisdicción sobre ambos recursos.(10)
De acuerdo con la normativa anteriormente esbozada, fue para las fechas en que los mandatos se remitieron al Tribunal de Primera Instancia que la jurisdicción se revir-tió a dicho foro. Por consiguiente, es desde ese momento que éste quedó en posición de implantar lo ordenado por el Tribunal de Apelaciones. Como consecuencia, la notifica-ción de 23 de diciembre de 2010 y toda actuación posterior, ya sea del tribunal o de las partes, resultaron completa-mente nulas.
A base de lo anterior, nos es forzoso concluir que los términos para recurrir de la Sentencia de 3 de agosto de 2010 no han comenzado a decursar, dado que las dos (2) notificaciones realizadas por el foro primario con relación a la misma resultaron defectuosas. La primera, por no noti-ficársele a una de las partes en el pleito, y la segunda, por prematura, el tribunal actuó sin jurisdicción para así hacerlo.
*157 Es meritorio mencionar que, posterior a la notificación enmendada de la Sentencia, sucedieron una serie de even-tos que incluyeron la presentación de una moción de recon-sideración ante el foro primario, recursos de apelación ante el foro apelativo intermedio y los recursos de certiorari de epígrafe actualmente ante nuestra consideración. Lamen-tablemente, este extenso trámite procesal tuvo, sin lugar a dudas, la infortunada consecuencia de consumir el tiempo y los recursos de los tribunales, y de permitir que las par-tes incurrieran en gastos que al final del día no tendrán efecto legal alguno.
En resumen, los eventos procesales en este recurso po-nen de manifiesto la situación anómala que puede surgir cuando los tribunales recurridos actúan sin jurisdicción, por el mero hecho de no aguardar hasta que el tribunal en alzada les remita el mandato correspondiente. Estas situa-ciones, lejos de promover la economía judicial y la justicia como pretende nuestro ordenamiento jurídico, provocan el congestionamiento de los tribunales con casos en los cuales el foro recurrido no tiene autoridad para intervenir y sobre los cuales cualquier dictamen emitido resultará nulo por falta de jurisdicción.
Lo anterior queda claramente evidenciado en el caso de autos: han transcurrido en exceso de dieciocho (18) años desde que ocurrió el accidente que dio origen al litigio, las partes se han visto obligadas a involucrarse en múltiples trámites procesales y todavía no se ha logrado obtener un remedio final.
De acuerdo con lo anterior, decretamos que la notifica-ción enmendada de la Sentencia del Tribunal de Primera Instancia de la cual se recurre es nula y, por consiguiente, el término para las partes apelar de la misma no ha comen-zado a discurrir.
*158 IV
Por todo lo que antecede, se expide el auto de “certiorari” en el Recurso CC-2011-0532 y se confirma la Sentencia des-estimatoria emitida por el Tribunal de Apelaciones en el recurso de apelación KLAN201100409 instado por los peti-cionarios, aunque por fundamentos distintos a los expresa-dos por dicho foro.

Asimismo, se expide el auto de “certiorari” en el Recurso CC-2011-533 y se revoca la Resolución emitida por el Tribunal de Apelaciones en el Recurso KLAN201100090. En cambio, se desestima la apelación iniciada por los recurri-dos, pues dicho foro carecía de jurisdicción para atenderla.

Conforme lo antes expuesto, se devuelve el caso al Tribunal de Primera Instancia para que, luego de recibir el man-dato correspondiente, la Secretaría de dicho tribunal noti-fique correctamente la Sentencia dictada el 3 de agosto de 2010 a todas las partes en el litigio.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez concurrieron con el resultado sin opinión escrita.

 Como veremos más adelante, estos eventos van a ser determinantes para la solución de los recursos ante nos.

 Según surge del sobre timbrado sometido por los recurridos, no fue sino hasta el 13 de enero de 2011 que el Fondo del Seguro del Estado les notificó a éstos copia de su Moción de Reconsideración.

 Incluimos el siguiente listado de las fechas relevantes a la controversia plan-teada con el propósito de facilitar el análisis correspondiente:
3 de agosto de 2010 — Sentencia emitida por el Tribunal de Primera Instancia.
22 de octubre de 2010 — El señor Colón y Frito Lays recurren al tribunal apela-tivo intermedio (Recursos KLAN201001534 y KLAN201001541, respectivamente).
29 de octubre de 2010 — Sentencias del Tribunal de Apelaciones desestimando los recursos por prematuros, por falta de notificación de la Sentencia del tribunal recurrido a la Corporación del Fondo del Seguro del Estado (FSE).
9 de noviembre de 2010 — Se notifica la Sentencia del Tribunal de Apelaciones en el Recurso KLAN201001541.
10 de noviembre de 2010 — Se notifica la Sentencia del Tribunal de Apelaciones en el Recurso KLAN201001534.
23 de diciembre de 2010 — Notificación Enmendada de la Sentencia del Tribunal de Primera Instancia de 3 de agosto de 2010.
4 de enero de 2011 — Presentación de Moción de Reconsideración por el FSE.
12 de enero de 2011 — Orden dando término a las partes para expresarse sobre la Moción de Reconsideración presentada por el FSE.
13 de enero de 2011 — Notificación de la Moción de Reconsideración a los recurridos.
13 de enero de 2011 — Notificación del mandato al Tribunal de Primera Instan-cia en el Recurso KLAN201001541.
18 de enero de 2011 — Moción de los recurridos objetando la Moción de Reconsi-deración en sus méritos.
20 de enero de 2011 — Moción de los recurridos objetando la. Moción de Reconsi-deración a base de la notificación tardía.
21 de enero de 2011 — Notificación de Orden dando término a las partes para expresarse sobre la Moción de Reconsideración presentada por el FSE (dicha notifi-cación fue efectuada a las 8:07 a.m.).
21 de enero de 2011 — Presentación del recurso de apelación de los recurridos ante el Tribunal de Apelaciones - KLAN201100090 (la misma ocurrió a la 1:50 p.m.).
24 de enero de 2011 — Notificación del mandato al Tribunal de Primera Instan-cia en el Recurso KLAN201001534.
8 de febrero de 2011 — Tribunal de Primera Instancia emite notificación dándose por enterado de la Sentencia del 29 de octubre de 2010 del Tribunal de Apelaciones.
2 de marzo de 2011 — Orden del Tribunal de Primera Instancia declarando “no ha lugar” la Moción de Reconsideración presentada por el FSE.
4 de marzo de 2011 — Notificación de Orden denegando Moción de Reconsidera-ción presentada por el FSE.
31 de marzo de 2011 — Apelación presentada por los peticionarios ante el Tribunal de Apelaciones - KLAN201100409.

 En cuanto a los asuntos de naturaleza penal, véase la Regla 197 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 En el caso de la presentación de un recurso de apelación en un procedimiento de naturaleza penal, véase la Regla 27 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B.

 Véase, además, la Regla 45 del Reglamento del Tribunal de Apelaciones, 4 L.RR.A. Ap. XXII-B, en lo relativo a los casos originados en la Comisión Estatal de Elecciones.

 La Regla 54.7 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III (ed. 2001)), disponía:
“Transcurridos diez (10) días laborables de haberse archivado en autos la noti-ficación de la sentencia dictada por el Tribunal de ... Apelaciones, el secretario de dicho tribunal devolverá el mandato a la sala del Tribunal de Primera Instancia que emitió la sentencia apelada o la orden o resolución recurrida, junto con todo el expe-diente original, cuando éste hubiere sido elevado, a menos que se haya concedido o esté pendiente de resolución una solicitud de reconsideración o a menos que el Tribunal de ... Apelaciones o el Tribunal Supremo ordenen otra cosa”.

 Aprobadas en el 2009 y puestas en vigor a partir del 1 de julio de 2010.

 Lo concerniente al mandato sí permanece preceptuado en la Regla 214 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual postula:
“Treinta (30) días después de haberse archivado en autos la notificación de la sentencia dictada en apelación o certiorari, se devolverá al Tribunal de Primera Instancia todo el expediente de apelación unido al mandato, a menos que se hubiere concedido o esté pendiente de resolución una solicitud de reconsideración o una pe-tición de certiorari ante el Tribunal Supremo, o a menos que de otro modo se orde-nare por el Tribunal de ... Apelaciones o por el Tribunal Supremo. Después de ha-berse remitido el mandato, el Tribunal de Primera Instancia librará todas las demás órdenes que sean necesarias para la ejecución de la sentencia”. (Énfasis nuestro).

 Según lo dispuesto en la Regla 52.3 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V) y en la Regla 18 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, una vez presentados los recursos de apelación KLAN201001534 y KLAN201001541, los procedimientos en el Tribunal de Primera Instancia, atinen-tes a la Sentencia dictada el 3 de agosto de 2010, quedaron suspendidos. En ese momento, el Tribunal de Apelaciones adquirió jurisdicción sobre los recursos y la conservó hasta que sus Sentencias de 29 de octubre de 2010 advinieron finales y firmes, y los mandatos relativos a las mismas fueron remitidos al foro primario.